UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH CUEVAS, as an individual and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>CONAM MANAGEMENT CORPORATION, a California corporation; and does 1 through10, inclusive,<br><br>          Defendants. | Case No.: 18cv1189-GPC(LL)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRODUCTION OF COLLECTIVE MEMBERS' CONTACT INFORMATION; AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S REQUEST FOR APPROVAL OF NOTICE TO THE MEMBERS OF THE COLLECTIVES**<br><br>**[Dkt. No. 37.]** |

  Before the Court is Plaintiff Elizabeth Cuevas' motion for an order conditionally certifying the class as a collective action under the Fair Labor Standards Act, 29 U.S.C. § 216(b), (2) for production of collective members' contact information, and (3) for approval of notice to the members of the collectives. (Dkt. No. 37.) An opposition was filed by Defendant on September 27, 2019. (Dkt. No. 54.) A reply was filed by Plaintiff

1

on October 4, 2019. (Dkt. No. 55.) Based on the reasoning below, the Court GRANTS Plaintiff's motion for conditional certification of collective action, GRANTS in part and DENIES in part Plaintiff's motion to direct Defendant to produce collective members' contact information, and GRANTS in part and DENIES in part Plaintiff's request for approval of notice to the members of the collectives.

**Background**

On September 6, 2019, Plaintiff Elizabeth Cuevas ("Plaintiff") filed the operative first amended complaint ("FAC") on behalf of herself and other similarly situated employees of Defendant ConAm Management Corporation ("Defendant" or "ConAm") alleging two causes of action for its failure to pay overtime pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and failure to timely pay overtime wages as required by 29 C.F.R. § 778.106. (Dkt. No. 48, FAC.) Specifically, Plaintiff claims that Defendant failure to pay overtime is based on its failure to calculate and/or factor non-discretionary bonuses into her regular rate of pay in assessing overtime pay. Second, Plaintiff claims Defendant's Bonus Adjustment or true-up payment pays overtime payments late or not at all. ConAm is a property management and real estate investment company with properties located throughout the United States. (Id. ¶ 2.)

Plaintiff was employed by ConAm from about December 21, 2017[1] to about March 29, 2019 as a non-exempt leasing agent/professional at one of Defendant's properties located in Reno, Nevada. (Dkt. No. 37-3, Cuevas Decl. ¶¶ 2, 3.) In her position as a Leasing Professional, she, as well as other employees, received non-discretionary bonuses from the Lease and Renewal Bonus Program, also referred to as the "Winner's Circle" program. (Id. ¶ 4; Dkt. No. 54-1, Gillane Decl., Ex. A.) In her position as Leasing Professional, Plaintiff was only eligible for the Winner's Circle bonus. (Dkt. No. 54-1, Gillane Decl., Ex. A.) Other non-exempt employees, such as Community

---

[1] According to ConAm, Plaintiff was hired around January 9, 2018. (Dkt. No. 24-1, Gillane Decl. ¶ 2.)

Managers and Business Managers are also subject to other non-discretionary bonuses. (Id.; Dkt. No. 57, Dadek Decl., Ex. B (UNDER SEAL).)

According to Defendant,

> The Winner's Circle bonus is based on outstanding achievement in two areas of property management: (1) new move-ins; and (2) lease renewals. In the first area, new move-ins, an employee's bonus is determined by the number of new apartment leases for which he or she is individually responsible in a calendar month. For each new move-in with a lease term of six months or more, the employee is eligible for a flat payment of $50. If the apartment is one which has undergone significant renovations, the employee is eligible for an additional premium, which may amount to a $75 flat payment or a different amount approved by the owner of the property. In the second area, lease renewals, bonus compensation is pooled. For each lease renewal with a term of six months or more, $50 (or an amount approved by the owner of the property) is contributed to a bonus pool. The total bonus pool is then split evenly among all eligible employees at the property based on the amount of time worked during that month. New move-ins and lease renewals are tracked on a monthly basis in the Move In Detail Report and Resident Activity Detail Report. At the end of each month, data from these two reports is manually entered into the Winner's Circle Bonus Worksheet ("WCB Worksheet"), which is used to determine each employee's eligibility for the Winner's Circle bonus and amount thereof.
>
> ConAm pays its employees twice monthly, on or about the 7th and 22nd days of each month. Generally speaking, the calculations on the WCB Worksheet are done by the 15th of the month (for the prior month's activity) and the employee, if eligible, receives any Winner's Circle bonus payment on the 22nd of the month. Thus, for example, if an employee earns $500 in Winner's Circle bonus compensation during July 2019, she will receive that bonus amount with her paycheck on August 22, 2019. Employees working overtime receive time-and-a-half for those overtime hours based on their hourly rate for the applicable pay period, but the Winner's Circle bonus is not factored into the employee's overtime rate during that pay period. Rather, the employee receives a "Bonus Adjustment" – essentially a true-up payment – in her next paycheck (on the 7th of the month), applying the Winners' Circle bonus payment to any overtime worked . . . . ConAm uses this "true up" method because, as stated above, the Winner's Circle bonus is determined after the end of a given month based upon leasing activity during that month. Accordingly, at the time overtime is paid ConAm simply doesn't know whether or not a Winner's Circle bonus has been earned. Similarly,

3

18cv1189-GPC(LL)

> the Bonus Adjustment cannot be calculated until both the Winner's Circle
> bonus is determined and all hours and compensation information has been
> fully processed by payroll, which by definition cannot happen until after
> the 22nd of the month when the Winner's Circle bonus is paid.

(Dkt. No. 54 at 9[2] (internal citations omitted).) Plaintiff claims ConAm's payroll policy violates the FLSA because it admittedly fails to calculate and/or factor non-discretionary bonuses into her regular rate of pay in assessing overtime pay and Defendant's stated Bonus Adjustment or true-up payment necessarily provides for late overtime payments.

## Discussion

### A. Legal Standard on Conditional Certification

The Fair Labor Standards Act of 1938 was enacted for the purpose of protecting all covered workers from "substandard wages and oppressive working hours." Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981). Section 16(b) provides employees the right to bring a private cause of action on behalf of herself and other employees "similarly situated" for specified violations of the FLSA but requires that each employee "opt-in" by filing a consent to sue with the court. 29 U.S.C. § 216(b); Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1064 (9th Cir. 2000). These suits are known as a "collective action" and allow aggrieved employees "the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989).[3]

The district court has discretion in determining whether a collective action is appropriate. Adams v. Inter-Con Sec. Sys., 242 F.R.D. 530, 535 (N.D. Cal. 2007) (citing

---

[2] Page numbers are based on the CM/ECF pagination.
[3] Although Hoffman-La Roche involved a claim under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, the ADEA incorporates the enforcement provisions of the FLSA including the "opt-in" provisions of 29 U.S.C. § 216(b).

4

Leuthold v. Destination America, Inc., 224 F.R.D. 462, 466 (N.D. Cal. 2004)). The plaintiff bears the burden of showing that the putative collective action members are "similarly situated." Id. at 535-36; see Harris v. Vector Mktg., Corp., 716 F. Supp. 2d 835, 837 (N.D. Cal. 2010) (quoting Murillo v. Pac. Gas & Elec. Co., 266 F.R.D. 468, 470 (E.D. Cal. 2010)).

Recently, the Ninth Circuit in Campbell v. City of Los Angeles, 903 F.3d 1090, 1100, 1109 (9th Cir. 2018), adopted the two-tiered certification process, which developed as "a product of interstitial judicial lawmaking or ad hoc district court discretion"[4], under the FLSA. First, at the pleading stage, plaintiffs will file a motion for preliminary certification and demonstrate the "similarly situated" requirement of § 216(b) for purposes of providing notice to putative collective members. Id. at 1109. The notice advises the members that they must affirmatively opt-in to the litigation. Id. At this early stage, the district court's review is limited to the pleadings and may be "supplemented by declarations or other limited evidence", and the standard is "lenient." Id.; Lewis v. Wells Fargo & Co., 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009) ("the standard for certification at this stage is a lenient one that typically results in certification."); Leuthold v. Destination America, Inc., 224 F.R.D. 462, 467 (N.D. Cal. 2004) (citations omitted) ("Because the court generally has a limited amount of evidence before it, the initial determination is usually made under a fairly lenient standard and typically results in conditional class certification.").

Where preliminary certification has been granted and once discovery has been completed or is near completion, the defendant may move for decertification on Plaintiff's failure to satisfy the "similarly situated" requirement in light of the evidence

---

[4] The Ninth Circuit noted that 29 U.S.C. § 216(b) provides no guidance on how collective litigation should proceed. The statute only requires that a collective action may proceed if the workers are "similarly situated" and affirmatively opt in to the litigation in writing. Campbell, 903 F.3d at 1100.

produced in discovery and the court takes a "more exacting look at the plaintiffs' allegations and the record." Campbell, 903 F.3d at 1109.

The court in Campbell also defined the meaning of "similarly situated" under the FLSA. Relying on the FLSA's remedial purpose, the Ninth Circuit held that to be "similarly situated", "plaintiffs must be alike with regard to some *material* aspect of their litigation." Id. at 1114 (emphasis in original). "[I]f the party plaintiffs' factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." Id. "[W]hat matters is not just any similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having the potential to advance these claims, collectively, to some resolution." Id. at 1115. In other words, "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." Id. at 1117.

## B. Analysis

Plaintiff seeks conditional certification of two nationwide collectives. First, she seeks a collective class of:

> All persons who are or have been employed by the Company in the United States as non-exempt employees at any time from June 6, 2015, through the present, who received overtime pay and non-discretionary incentive pay, including without limitation, bonuses (the "Class").

Second, she seeks a subclass of individuals who receive non-discretionary bonuses from the same incentive program as Plaintiff to include:

> All persons who are or have been employed by the Company in the United States as non-exempt employees at any time from June 6, 2015, through the present, who received overtime pay and non-discretionary incentive pay from the bonus program referred to as the "Winner's Circle" bonus program (the "Winner's Circle Subclass").

(Dkt. No. 48, FAC ¶ 13.) Plaintiff argues that she is similarly situated to putative collective members because all are subject to ConAm's uniform payroll policy. In

support, she presents Defendant's discovery responses. ConAm reports that over 1,000 current and former employees received compensation from the Winner's Circle program and it also paid about $183,143.78 in "true-up" compensation for Winner's Circle bonuses. (Dkt. No. 37-2, Dadak Decl., Ex. C, Interrog. Nos, 6, 8.) ConAm also admitted that it computes Winner's Circle compensation and true-up payments, that it controls its payroll, and that it does not pay the true-up payments in the same pay period that it pays the corresponding Winner's Circle bonus and overtime. (Id., Ex. D, RFA's Nos. 3, 4, 7, 8, 12, 15.) This demonstrates that ConAm has a uniform policy in calculating overtime pay and the timing of overtime pay for those receiving Winner's Circle bonuses.

Plaintiff also claims she is similarly situated to all non-exempt ConAm employees who receive other types of non-discretionary bonus. She explains that because Community Managers and Business Managers are subject to the Winner's Circle program, ConAm must also use the same payroll system. (Dkt. No. 54-1, Gillane Decl., Ex. A.) Furthermore, Community Managers and Business Managers are considered non-exempt employees entitled to overtime pay and are subject to other non-discretionary bonus programs. (Dkt. No. 54-1, Gillane Decl., Ex. A ("Community/Business managers are also eligible for the Community/Business Manager Bonus Program").) Therefore, these employees are also subject to the same uniform payroll policy as the Winner's Circle bonuses.

Defendant first contends that Plaintiff has not demonstrated she is similarly situated to putative collective members in California who have agreed to arbitration because she is not subject to an arbitration agreement, and in the alternative, if the Court conditionally certifies a collective class, the Court should exclude employees subject to arbitration. Plaintiff responds that her inability to challenge the enforceability of other employees' arbitration agreements is not an issue because in a collective action, all opt-in plaintiffs will serve as co-equal party plaintiffs and therefore, any challenges may be raised by them. Further this "material difference" is not sufficient to defeat conditional certification.

District courts within the country are divided on whether notice of a FLSA collective action should be provided to employees who have signed arbitration agreements. In re JPMorgan Chase & Co., 916 F.3d 494, 499 n. 6 (5th Cir. 2019) (noting that district courts are "splintered" over this issue); Romero v. Clean Harbors Surface Rentals USA, Inc., -- F. Supp. 3d--, 2019 WL 4280237, at *2 (D. Mass. Sept. 11, 2019) ("District courts around the country have generated conflicting answers to the question of whether workers who signed arbitration agreements can receive notice of an FLSA collective action."); Lijun Geng v. Shu Han Ju Rest. II Corp., 18cv12220 (PAE) (RWL), 2019 WL 4493429, at *8 (S.D.N.Y. Sept. 9, 2019) ("District courts generally have been divided as to whether notice of an FLSA collective action should be sent to employees who have agreed to arbitrate claims against their employer."). Recently, the Fifth Circuit, the only circuit to address this issue, held that a district court does not have discretion "to send or require notice of a pending FLSA collective action to employees who are unable to join the action because of binding arbitration agreements." In re JPMorgan Chase., 916 F.3d at 504. At the conditional certification stage, "if there is a genuine dispute as to the existence or validity of an arbitration agreement, an employer that seeks to avoid a collective action, as to a particular employee, has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for that employee." Id. at 502-03. In the case, the parties did not dispute the existence or enforceability of the arbitration agreements. Id. at 498.

The Ninth Circuit has not yet ruled on this issue, and district courts in this circuit, even post In reJPMorgan Chase, have granted conditional certification providing notice to potential collective members and deferred the merits-based question of whether the arbitration agreements are valid and enforceable to the second stage. See Monplaisir v. Integrated Tech Grp, LLC, No. C 19-1484 WHA, 2019 WL 3577162, at *3 (N.D. Cal. Aug. 6, 2019) (granting conditional certification and deferring issue of whether arbitration agreements are valid and enforceable to second stage of collective action process); Gonzalez v. Diamond Resorts Int'l Mktg., Inc., Case No. 18cv979-APG-CWH,

2019 WL 3430770, at *5 (D. Nev. July 29, 2019) (same). As one district court noted in 2015, "[n]o district court in our circuit has denied conditional certification on the basis that some members of the proposed collective may be subject to valid and enforceable arbitration clauses. The decisions that have addressed that issue have all found that the issue of the enforceability of arbitration clauses related to the merits of the case and therefore should be dealt with in phase two." Saravia v. Dynamex, Inc., 310 F.R.D. 412, 424 (N.D. Cal. 2015) (citing Shaia v. Harvest Mgmt. Sub LLC, 306 F.R.D. 268 (N.D. Cal. 2015) (Chief Judge Phyllis Hamilton); Deatrick v. Securitas Sec. Servs. USA, Inc., No. 13–cv–05016, 2014 WL 5358723 (N.D. Cal., Oct. 20, 2014) (Judge Jon Tigar); Boyd v. Bank of America Corp., No. 13–cv–0561, 2013 WL 6536751 (C.D. Cal. Dec. 11, 2013) (Judge David Carter)); see also Conde v. Open Door Mktg., LLC, 223 F. Supp. 3d 949, 968 (N.D. Cal. 2017) (arbitration agreements do not preclude conditional certification). Even the weight of authority outside the Ninth Circuit favors handling the arbitration issue during stage two of the certification process. See Greene v. Omni Limousine, Inc., Case No. 18cv1760-GMN-VCF, 2019 WL 2503950, at *4 (D. Nev. June 15, 2019) ("The weight of authority outside the Ninth Circuit similarly recognizes the issue of arbitrability as one best handled during stage two of the certification process."); Lijun Geng, 2019 WL 4493429, at *9 (S.D.N.Y. Sept. 9, 2019) (following the greater weight of authority and allowing notice of collective action to potential opt-ins who may be subject to an arbitration agreement); Guzman v. Three Amigos SJL Inc., 117 F. Supp. 3d 516, 526 (S.D.N.Y. 2015) ("[T]he fact that some of the contracts have arbitration provisions . . . [does not] create any differences between plaintiffs and other [potential plaintiffs] with respect to whether defendants violated the FLSA."); Romero v. La Revise Assoc., L.L.C., 968 F. Supp. 2d 639, 647 (S.D.N.Y. 2013) ("[C]ourts have consistently held that the existence of arbitration agreements is irrelevant to collective action approval because it raises a merits-based determination.").

Therefore, Defendant's reliance on In re JPMorgan Chase to support its position is not persuasive and the Court follows the district courts in this circuit and concludes that

conditional certification is not defeated because certain California employees signed arbitration agreements.

Second, Defendant argues that Plaintiff is not similarly situated to some employees who receive "true-up" payments later than others. Defendant reports that it has a regular practice of paying employees a true-up payment in a particular pay period but that it occasionally misses that payment and makes the payment later. Plaintiff contends that Defendant wants to defeat conditional certification based on a few occasions its conduct is even worse than she alleges. She argues that on conditional certification, collective members need not be identical in all respects but just in some material way.

Here, differences between employees based on the timing of receiving "true-up" payments do not defeat a finding that collective members are "similarly situated." Plaintiff argues that ConAm failed to timely pay her overtime. According to Plaintiff, "true-up" payments as described by Defendant constitutes an admission that it does not timely pay employees' overtime. Whether the "true-up" payments are paid one month later, two months later, or not at all, all those payments are in violation of the FLSA. Accordingly, the Court disagrees with Defendant's argument.

Finally, Defendant argues that the Court should limit the putative collective to those employees who received Winner's Circle bonus payments, and not employees subject to other bonus programs. ConAm argues that not only does Plaintiff have no standing to pursue claims on a bonus program she was not subject to but she is also not "similarly situated" to employees subject to the other bonus programs. Plaintiff replies that Defendant administers its payroll the same with respect to all employees based on a single policy and she is similarly situated to all employees who receive non-discretionary bonus payments.

On a motion for conditional certification, the Court looks at whether the plaintiff is "similarly situated" to other employees. As described by the Ninth Circuit in Campbell, a putative collective class differs from a Rule 23 class because the FLSA leaves no doubt that "every plaintiff who opts in to a collective action has party status." Campbell, 903

F.3d at 1104. The only consequence of conditional certification is "the sending of court-approved written notice" to workers who may wish to join the litigation as individuals; there is no gatekeeping role as required by Rule 23's class certification. Id. at 1101.

Defendant has not provided any legal support for its standing argument. The one relevant case Defendant cites alleging violations of the FLSA held, on summary judgment, that the named plaintiff, himself, did not have standing to challenge the legality of the policy, not that the named plaintiff had no standing to pursue collective class that includes additional policies he or she was not subject to. See Stein v. Rousseau, No. CV 05-264-FVS, 2006 WL 224043, at *2-3 (W.D. Wash. Jan. 30, 2006).

Because opt-in plaintiffs each become a party to the action, a requirement that the named plaintiff have standing for each opt-in plaintiffs' claims is not persuasive. Plaintiff alleges that ConAm maintains a single policy that fails to properly include non-discretionary bonuses in calculating overtime pay and it pays portions of overtime payment late or not at all. Leasing Professionals, Business Managers and Community Managers are all subject to the Winner's Circle program. (Dkt. No. 54-1, Gillane Decl., Ex. A.) Moreover, Community Managers and Business Managers are also subject to other non-discretionary bonus programs. (Dkt. No. 57, Dadek Decl., Ex. B (UNDER SEAL).) Because Plaintiff has plausibly demonstrated that ConAm handles its payroll uniformly as to non-discretionary bonuses, the lenient standard has been met. See Campbell, 903 F.3d at 1109 ("'lenient'" standard . . . sometimes articulated as requiring 'substantial allegations,' sometimes as turning on a 'reasonable basis,' but in any event loosely akin to a plausibility standard, commensurate with the stage of the proceedings."). If discovery reveals that the collective members are not "similarly situated," ConAm may move to decertify the collective class.

Accordingly, the Court GRANTS Plaintiff's motion to conditionally certify two collective classes under the FLSA.

///

///

**B.      Proposed Method and Form of Notice**

Once a collective class has been conditionally certified, potential FLSA class members are entitled to "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions as to whether to participate." Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989). The Court has authority and discretion to monitor the preparation and distribution of the notice, to "ensure that it is timely, accurate, and informative." Id. at 172

In her motion, Plaintiff requests that the Court direct Defendant to provide her counsel with the names, job titles, dates of employment, last known mailing and email addresses and phone numbers of the class members in order to assist with issuing the notice. If any collective members' mail is returned by the post office, Plaintiff asks that Defendant should be ordered to provide additional identifying information such as dates of birth and/or social security numbers to help with effectuating notice. Defendant objects to requiring it to provide birthdates and social security numbers for collective members as improper.

Courts routinely allow the production of employees' mail and email addresses and telephone numbers. Knight v. Concentrix Corp., Case No. 18cv7101-KAW 2019 WL 3503052, at *5 (N.D. Cal. Aug. 1, 2019) (quoting Benedict v. Hewlett-Packard Co., No. 13cv1119-LHK, 2014 WL 587135, at *14 (N.D. Cal. Feb. 13, 2014) ("Courts routinely approve the production of email addresses and telephone numbers with other contact information to ensure that notice is effectuated. . . .")). As to birthdates and social security numbers, while some courts grant such unopposed requests by plaintiffs, see Wong v. HSBC Mortg. Corp. (USA), No. C-07-2446 MMC, 2008 WL 753889, at *4 (N.D. Cal. Mar. 19, 2008) (granting the plaintiffs' unopposed request for last four digits of employees' social security number); Lewis v. Wells Fargo & Co., 669 F. Supp. 2d 1124, 1130 (N.D. Cal. 2009), other courts decline granting such requests as they would violate an employee's privacy rights, see Russell v. Swick Mining Servs., USA Inc., No. CV 16-2887 PHX, JJT, 2017 WL 1365081, at *5 (D. Ariz. Apr. 14, 2017) (denying the

plaintiff's request for employees' social security numbers and birth dates); Delgado v. Ortho-McNeil, Inc., No. SACV 07-263 CJCMLGX, 2007 WL 2847238, at *3 (C.D. Cal. Aug. 7, 2007)). In this case, the Court has concerns regarding the production of employees' birthdates and social security numbers for privacy reasons without Plaintiff providing sufficient reasons for their disclosure. Accordingly, the Court GRANTS Plaintiff's request to direct Defendant to provide her counsel with names, job titles, dates of employment, last known mailing and email addresses and phone numbers of the class members and DENIES her request for production of their birthdates and social security numbers.

Next, Plaintiff asks the Court to allow her counsel to send a follow-up postcard to any class members who have not responded within 30 days after the mailing of the initial notice. She argues that it is common practice for courts to direct a follow-up notice as it assists with the dissemination of notice to similarly situated employees. ConAm objects to permitting Plaintiff's counsel to send a follow-up notice because courts in other districts have concluded that reminder notices could be interpreted as the Court encouraging a lawsuit and Plaintiff has not demonstrated why the initial notice would not be sufficient.

District courts in this circuit routinely approve reminder notices 30 days prior to the end of the opt-in period. See Benedict v. Hewlett-Packard Co., Case No. 13cv119-LHK, 2014 WL 587135, at *14 (N.D. Cal. Feb. 13, 2014) (courts commonly approve reminder notices); Helton v. Factor 5, Inc., No. C 10-4927 SBA, 2012 WL 2428219, at *7 (N.D. Cal. June 26, 2012) (allowing a reminder postcard to potential plaintiffs); Sandoval v. Tharaldson Employee Mgmt., No. EDCV 08-00482-VAP(OPx), 2009 WL 3877203, at *11 (C.D. Cal. Nov. 17, 2009) (allowing additional notice before granting court approval). Thus, following the district courts in this circuit, the Court grants Plaintiff's request for a follow-up postcard to those class members who have not responded within 30 days after the mailing of the initial notice.

Finally, Plaintiff requests that the Court order Defendant to post the notice at all of Defendant's worksites in the same areas in which it is required to post FLSA requirements in order to assist with dissemination of the notice. ConAm objects arguing that courts in this circuit often deny these requests.

"First class mail is ordinarily sufficient to notify class members who have been identified." Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 492-93 (E.D. Cal. 2006). But there is no bar to posting in Defendant's workplace as courts have approved this method of notice. Id. at 493. Posting at the defendant's workplace provides notice to current employees and courts have concluded that a defendant most likely has the most current contact information of its employees, and therefore have denied the plaintiff's request to post the notice at the worksite. See Litvinova v. City and Cnty. of San Francisco, Case No. 18cv1494-RS, 2019 WL 1975438, at *5 (N.D. Cal. Jan. 3, 2019) (noting plaintiff had not explained why posting notice in the workplace is necessary in light of sending the notice by mail, email, sending reminder postcards and supplementation by production of telephone numbers); Russell v Wells Fargo & Co., No. C 07-3993 CW, 2008 WL 4104212, at *5 (N.D. Cal. Sept. 3, 2008) ("Defendant, however, is unlikely to have obsolete contact information for its current employees, and posting notice in the workplace or distributing it via the payroll system will do nothing to notify those class members who are no longer employed by Defendant"); Guy v. Casal Inst. of Nevada, LLC, No. 13cv2263-APG, 2014 WL 1899006, at *7 (D. Nev. May 12, 2014) (denying request to post notices in the defendant's workplace because there was no indication that the defendants are unable to provide current mailing and email addresses of the collective members).

Here, Plaintiff has not provided any reason why mailing or emailing the notice to collective members as well as a reminder notice would not be sufficient to inform current employees. Moreover, as a current employer, ConAm most likely has the most current contact information for current employees who are potential collective members. As

such, the Court denies Plaintiff's request to order ConAm to post the notice at its worksites.

Next, ConAm argues that Plaintiff's proposed 90-day opt-in period should be 60 days because Plaintiff has not stated why she needs that much time to notify potential collective members. Plaintiff opposes arguing that shortening the time to 60 days will place an unnecessary obstacle in reaching former employees who need to be located.

For purposes of a deadline to opt-in, "timeframes of sixty to ninety days appear to have become the presumptive standard in this district." Ramirez v. Ghilotti Bros. Inc., 941 F. Supp. 2d 1197, 1207 (N.D. Cal. 2013) (quoting Sanchez v. Sephora USA, Inc., No. 11–03396–SBA, 2012 WL 2945753, at *6 (N.D. Cal. July 18, 2012)); Benedict, 2014 WL 587135, at *13 (granting ninety days to opt-in).

In this case, Plaintiff will have to locate former employees of ConAm, and in the event a former employee is unable to be located, additional time will be necessary to locate these individuals. Therefore, 90 days should be reasonable to address any potential issues in locating former employees. Accordingly, the Court approves a 90-day opt-in period.

Lastly, ConAm objects to Plaintiff designating herself as the agent for those who opt-in and her counsel as the legal representative for members of the collective who join. It asserts that collective members should be informed of their right to retain their own counsel. Plaintiff, in her reply, merely argue that adequacy of representation is not required under the FLSA without addressing opt-in plaintiffs' right to choose their own representation.

The proposed notice states that opt-in plaintiffs will be represented by Plaintiff's counsel and that Cuevas will be the opt-in plaintiffs' agent. (Dkt. No. 37-1, Ex. A.) There is no provision that opt-in plaintiffs may retain their own counsel. In a collective action, as noted by Plaintiff in her motion, each opt-in plaintiff joins as "co-equal party plaintiffs." (See Dkt. No. 55 at 6.) Therefore, proposed plaintiffs should be notified that they have a choice to either retain their own counsel or be represented by named

15

plaintiff's counsel. See Senne v. Kansas City Royals Baseball Corp., Case No. 14cv608-JCS, 2015 WL 6152476, at *19 (N.D. Cal. Oct. 20, 2015) (providing notice that "If you choose to join this suit, you may retain your own counsel (at your own expense) or choose to be represented by the attorneys who represent the Named Plaintiffs and any players who consent to join this suit."); Heaps v. Safelite Solutions, LLC, No. 10cv729, 2011 WL 1325207, at *9 (S.D. Ohio Apr. 5, 2011) ("the notice shall contain a statement indicating that the opt-in plaintiffs are entitled to be represented by the named Plaintiffs' counsel or by counsel of his or her own choosing."); Waterscheid v. City of El Monte, 2018 WL 6321645, at *4 (C.D. Cal. Sept. 6, 2018) (no reason why the notice should not contain information about retaining one's own attorney and "the only reason the Court can guess as to why Plaintiffs contest this proposal is the desire of Plaintiffs' counsel to maximize their own recovery in the case.").

Accordingly, the Court directs that Plaintiff revise the notice to include language that opt-in plaintiffs may appear by themselves or choose the named Plaintiff to be their agent and may retain their own counsel or choose to be represented by the named Plaintiff's attorney.

## Conclusion

The Court GRANTS Plaintiff's motion for conditional certification of collective action for the following classes,

> All persons who are or have been employed by the Company in the United States as non-exempt employees at any time from June 6, 2015, through the present, who received overtime pay and non-discretionary incentive pay, including without limitation, bonuses (the "Class").

> and

> All persons who are or have been employed by the Company in the United States as non-exempt employees at any time from June 6, 2015, through the present, who received overtime pay and non-discretionary incentive pay from the bonus program referred to as the "Winner's Circle" bonus program (the "Winner's Circle Subclass").

The Court DIRECTS Defendant to produce potential class members' names, job titles, dates of employment, last known mailing and email addresses and phone numbers to Plaintiff's counsel no later than fourteen (14) days after the entry of this Order. Plaintiff shall incorporate the aforementioned changes into her proposed Notice, and the parties shall meet and confer and submit a joint proposed final Notice and Consent to Join form to the Court within seven (7) days of filed date of this Order.

The hearing set on October 25, 2019 shall be **vacated**.

IT IS SO ORDERED.

Dated: October 21, 2019

Hon. Gonzalo P. Curiel
United States District Judge