Majed Dakak (SBN 271875)
*mdakak@kbslaw.com*
KESSELMAN BRANTLY STOCKINGER LLP
1230 Rosecrans Avenue, Suite 400
Manhattan Beach, CA 90266
(310) 307-4555
(310) 307-4570 (Fax)

Dennis S. Hyun (SBN 224240)
*dhyun@hyunlegal.com*
HYUN LEGAL, APC
515 S. Figueroa Street, Suite 1250
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 (Fax)

Attorneys for PLAINTIFF and the COLLECTIVE

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH CUEVAS, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CONAM MANAGEMENT CORPORATION, a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:18-cv-1189-GPC-LL<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT PURSUANT TO THE FAIR LABOR STANDARDS ACT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:        February 5, 2021<br>Time:        1:30 p.m.<br>Courtroom:   2D, 2nd Floor<br><br>**COLLECTIVE ACTION** |

**TO ALL PARTIES AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that at 1:30 p.m., on February 5, 2021, or as soon thereafter as the matter may be heard in Courtroom 2D, 2nd Floor, of the United States District Court for the Southern District of California, located at 221 West Broadway, San Diego, CA 92101, before the Honorable Gonzalo P. Curiel, Plaintiff Elizabeth Cuevas ("Plaintiff") will and hereby does move the Court for an Order approving: (1) the collective action settlement between Plaintiff and Defendant ConAm Management Corporation ("Defendant") (collectively, the "Parties"), as memorialized in the concurrently filed Joint Stipulation of Collective Action Settlement and Release (the "Stipulation," or "Settlement Agreement"); (2) the $310,000.00 payment for resolution of this matter ("Gross Settlement Value"), which consists of a payment to the collective of $25,152 (less applicable employer-side payroll taxes payroll taxes), $105,421.33 for collective counsel's attorneys' fees, $169,676.67 for collective counsel's litigation costs, $5,000 to Plaintiff as an enhancement award, and $4,750 to Phoenix Settlement Administrators for the administration costs of this settlement; and (3) entry of judgment and dismissal with prejudice of this collective action with respect to Plaintiff and the 367 opt-ins pursuant to the Agreement.

This motion is made on the grounds that the Settlement is the product of arms-length, good-faith negotiations; is fair, reasonable, and adequate to the Opt-Ins; and should be approved, as discussed in the attached memorandum. Defendant does not oppose this motion.

This motion is based on this notice, the attached memorandum of points and authorities in support of the motion, the concurrently filed Agreement, the Declarations of Majed Dakak and Dennis S. Hyun, the expert report of Chen Song, Ph.D., which sets forth the damages of the collective action members, the Court's record of this action, all matters of which the Court may take notice; and oral and documentary evidence presented at the hearing on the motion.

/ / /

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT PURSUANT TO THE FAIR LABOR STANDARDS ACT; AND MEMO. OF P'S AND A'S IN SUPPORT

Dated: November 6, 2020

KESSELMAN, BRANTLY & STOCKINGER LLP
HYUN LEGAL, APC

By: _____*s/ Majed Dakak*_____
        Majed Dakak
        Dennis S. Hyun

Attorneys for Plaintiff and the Collective

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................... 7

II. PROCEDURAL HISTORY ...................................................................... 8

III. SETTLEMENT TERMS .......................................................................... 10

    A. Legal Standard .............................................................................. 12

    B. This Settlement Constitutes A Fair And Reasonable Resolution Of A Bona Fide Dispute. ............................................................... 13

    C. The Proposed Settlement Is Fair and Reasonable. ...................... 14

    D. The Settlement's Proposed Named Plaintiff Service Awards Are Fair And Reasonable. .............................................................. 14

    E. The Settlement's Proposed Allocation For Plaintiffs' Counsel Attorneys' Fees And Costs Award Is Reasonable. ....................... 15

V. CONCLUSION ........................................................................................ 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brighton Collectibles, Inc. v. Coldwater Creek Inc.*,
  2009 WL 160235 (S.D. Cal. July 2009) ............................................................. 16

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*,
  532 U.S. 598 (2001) ..................................................................................... 17, 18

*Carbonell v. I.N.S.*,
  429 F.3d 894 (9th Cir. 2015) ....................................................................... 17, 18

*Children's Hospital and Med. Center v. Belshe*,
  97 Cal. App. 4th 740 (2002) ............................................................................. 16

*Chun-Hoon v. McKee Foods Corp.*,
  716 F. Supp. 2d 848 (N.D. Cal. 2010) .............................................................. 17

*Costa v. Commissioner of Social Sec. Admin.*,
  690 F.3d 1132 (9th Cir. 2012) .......................................................................... 16

*Curtis-Bauer v. Morgan Stanley & Co. Inc.*,
  2008 U.S. Dist. LEXIS 91465 (N.D. Cal. Oct. 22, 2008) ................................. 15

*Glass v. UBS Fin. Servs.*,
  2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 27, 2007) .................................... 15

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. 2011) ...................................................................... 16

*Hens v. ClientLogic Operating Corp.*,
  2010 U.S. Dist. LEXIS 139126 (W.D.N.Y. Dec. 21, 2010) ................. 14, 15, 18

*Holtville Alfalfa Mills v. Wyatt*,
  230 F.2d 398 (9th Cir. 1955) .............................................................................. 9

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................. 18

*In re Media Vision Tech Sec. Litigs.*,
  913 F. Supp. 1362 (N.D. Cal. 1996) ................................................................. 18

*In re Portal Software, Inc. Sec. Litig.*,
  2007 WL 4171201 (N.D. Cal. 2007) ................................................................ 17

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ............................................................................. 16

*Ketchum v. Moses*,
  24 Cal.4th 1122 (2001) ............................................................................... 16, 17

*Khait v. Whirlpool Corp.*,
  2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) .................................... 12

*Labotest, Inc. v. Bonta*,
  297 F.3d 892 (9th Cir. 2002) ............................................................................ 18

*Lee v. The Timberland Co.*,
  2008 U.S. Dist. LEXIS 108098 (N.D. Cal. June 19, 2008) ......................... 12, 15

*Mills v. Electric Auto-Lite Co.*,
  396 U.S. 375 (1970) .......................................................................................... 18

**TABLE OF AUTHORITIES** *(cont.)*

Page(s)

**Cases** *(cont.)*

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) ................................................................................17

*Sorenson v. Mink*,
  239 F.3d 1140 (9th Cir. 2001) ................................................................................16

*Stetson v. West Publishing Corp.*,
  Case No. 13-57061, (9th Cir. May 11, 2016) .........................................................17

*Stevens v. Safeway Inc.*,
  2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008) ......................................14

*Third Circuit Task Force Report Selection of Class Counsel*,
  208 F.R.D. 340 (2002) ............................................................................................16

*United Steelworkers of America v. Phelps Dodge Corp.*,
  896 F.2d 403 (9th Cir. 1990) ..................................................................................16

*Vo v. Las Virgenes Municipal Water Dist.*,
  79 Cal. App. 4th 440 (2000) ...................................................................................17

*Yue Zhou v. Wang's Restaurant*,
  2007 U.S. Dist. LEXIS 60683 (N.D. Cal. Aug. 8, 2007) .......................................12

**Statutes**

Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ..............................................*passim*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

As this Court knows, this case has been heavily litigated for over two years. Plaintiff Elizabeth Cuevas ("Plaintiff") has aggressively pursued matters in law and motion, including prevailing on collective action certification, and filing discovery briefs before Magistrate Lopez and this Court. Moreover, on August 29, 2019, Plaintiff and Defendant ConAm Management Corporation ("Defendant") (collectively, the "Parties"), attended a private mediation before the Hon. Layne Phillips (Ret.), a well-respected retired federal judge and complex class action mediator, which was unsuccessful. After significant additional litigation including many depositions taken, on August 27, 2020, the Parties attended a Settlement Conference before Magistrate Judge William V. Gallo. At the Settlement Conference, Judge Gallo issued a "mediator's proposal," which the Parties accepted to avoid further litigation and to settle and resolve the case. Thus, this litigation and the negotiations leading up to this settlement were always arms' length and adversarial. Further, this settlement was recommended by Judge Gallo.

The Parties have agreed to settle all of the claims of the 367 Opt-In Plaintiffs ("Opt-Ins") and to dismiss all the claims in the case. The Settlement Fund of $310,000 to resolve the claims of the Opt-In Plaintiffs is fair, reasonable, and adequate, and should be approved by the Court, in that it provides 100% compensation of damages to the collective, as discussed in the concurrently filed expert report of Chen Song, Ph.D., of Nathan Associates, Inc. This result is even more meritorious when taking into account that 88 of 367 Opt-Ins signed arbitration agreements (or approximately ¼ of the collective). In addition, this Court has never made a merits determination regarding Plaintiff's claims, and Defendant has consistently maintained that it has significant defenses on the merits, including the argument that the Opt-In Plaintiffs have in fact been overpaid in the aggregate. The Settlement thus provides concrete monetary relief to the Opt-Ins, and eliminates the risks inherent in further litigation.

## II. PROCEDURAL HISTORY

Plaintiff worked for Defendant as a non-exempt leasing professional. On June 6, 2018, Plaintiff filed a Collective Action Complaint commencing the above-captioned action in the United States District Court for the Southern District of California on June 6, 2018, where it was assigned case number 3:18-cv-1189-GPC-LL.

Plaintiff alleges that ConAm violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA") by failing to (1) include bonus payments in employees' regular rate of pay for the purposes of calculating overtime and (2) timely pay those same overtime wages. More specifically, Named Plaintiff alleges that the way ConAm factors in (or fails to factor in) certain allegedly non-discretionary bonuses – including but not limited to the "Winner's Circle" bonus, "Maintenance" bonus, "Compliance" bonus, etc. – into overtime compensation is unlawful.

On May 16, 2019, Plaintiff filed a motion for conditional collective action certification and Court-supervised notice of the pending collective action. On October 21, 2019, the Court issued an order conditionally certifying the following two collectives:

> 1) All persons who are or have been employed by the Company in the United States as non-exempt employees at any time from June 6, 2015, through the present, who received overtime pay and non-discretionary incentive pay, including without limitation, bonuses (the "Class"); and
> 2) All persons who are or have been employed by the Company in the United States as non-exempt employees at any time from June 6, 2015, through the present, who received overtime pay and non-discretionary incentive pay from the bonus program referred to as the "Winner's Circle" bonus program (the "Winner's Circle Subclass").

("Certification Order"). The second collective is a subset of the first and consists only of Defendant's employees who, like Plaintiff, received bonus pay from the Winner's Circle bonus program.

On November 4, 2019, the Court approved notice and consent-to-join forms to be sent to potential collective action members. There are currently three hundred and sixty-seven (367) opt-ins to the collective. (Declaration of Majed Dakak ("Dakak Decl.") ¶ 8; *see also* ECF 76 (Notice of Filing Plaintiff's Consent to Sue Forms)). Of

these, Defendant contends that at least eighty-eight (88) individuals have agreed to binding individual arbitration of their claims and, therefore, can be compelled to resolve their claims in that forum. (*Id.*)  Defendant has produced arbitration agreements for these individuals.  (*Id.*)

Throughout this litigation, Plaintiff and her counsel have engaged in significant investigation of the facts at issue, have exchanged extensive documents and information, have engaged in multiple depositions, and Plaintiff retained experts to evaluate the case, perform a damage analysis, and provide an expert opinion on Defendant's payroll systems, which have allowed the Parties to fully assess the value of the claims involved.  (Dakak Decl. ¶ 9; Declaration of Dennis S. Hyun ("Hyun Decl.") ¶ 8).  As set forth in Dr. Song's expert report on damages, which was exchanged with Defendant during expert discovery, the total amount of allegedly unpaid bonus overtime compensation for the opt-in collective is $12,576.  (Dakak Decl. ¶ 9, **Exh. B** [Dr. Song Expert Report] at p. 4, ¶ 8.).  This amount is doubled to $25,152 through the imposition of liquidated damages.  (*Id.*)[1]  Defendant disputes this number for several reasons, including the fact that – from it's perspective – the way ConAm factors in allegedly non-discretionary bonuses into overtime actually results in an overpayment to employees in most pay periods.

On August 29, 2019, the Settling Parties attended a private mediation before the Hon. Layne Phillips (Ret.), a well-respected complex class action mediator, which was

---

[1] Per page 4 of Dr. Song's damages summary, liquidated damages on the total amount of unpaid bonus overtime compensation (nominal or base damages) for the opt-in collective is $25,152.  The other damages calculated by Dr. Song in her summary on page 4, are interest derived calculations based on the nominal or base damages.  However, under the FLSA, one cannot seek both interest and liquidated damages, *i.e.*, a plaintiff must select one or the other.  *See Holtville Alfalfa Mills v. Wyatt,* 230 F.2d 398, 401 (9th Cir. 1955) (Under the FLSA, "No interest should be allowed on sums in part or whole assessed as liquidation damages"); *id.* at 404 ("To allow an employee to recover the basic statutory wage and liquidated damages, with interest, would have the effect of giving an employee double compensation"); Thus, the expected best result that would apply for this collective to maximize damages under the FLSA was to apply liquidated damages ($25,152) instead of interest on nominal or base damages.

unsuccessful. (Dakak Decl. ¶ 11; Hyun Decl. ¶ 7). After significant additional litigation, on August 27, 2020, the Settling Parties attended a Settlement Conference before Magistrate Judge William V. Gallo. (*Id.*) At the Settlement Conference, Judge Gallo issued a "mediator's proposal" for resolution of this matter for $310,000, which the Parties accepted to avoid further litigation and to settle and resolve this case. Plaintiff and her counsel have concluded that the settlement reflected herein is fair, reasonable, and in the best interests of the Settlement Collective of 367 Opt-Ins and respectfully request that the Agreement be approved by the Court.

## III.   SETTLEMENT TERMS

The Parties' have executed the Joint Stipulation of Collective Action Settlement and Release (the "Stipulation," or "Settlement Agreement"), which is being filed as a standalone document herewith, Dkt. 82. The Settlement Agreement provides for a $310,000.00 payment for resolution of this matter ("Gross Settlement Value"), which consists of a payment to the collective of $25,152 (less any applicable employer-side payroll taxes payroll taxes), $105,421.33 for collective counsel's attorneys' fees, $169,676.67 for collective counsel's litigation costs, $5,000 to Plaintiff as an enhancement award, and $4,750 to Phoenix Settlement Administrators for the administration costs of this settlement. (Stipulation at ¶¶ II(10), VIII(23)-(24), IX(28)(a)-(e)). The Net Settlement Amount is thus estimated to be $25,152.00 before any applicable employer-side taxes. After deducting for employer-side taxes the Net Settlement Amount is expected to be $23,334.77.[2] Thus, on a pretax basis, the Net Settlement Amount of $25,152.00 is 100% of the maximum exposure of $25,152 for the 367-member collective. Thus, collective action members are receiving 100% of the total liability (and slightly less than 100% of the total liability after accounting for employer-side taxes).

---

[2] This is a conservative number using an approximate maximum employer-side rates. Per the settlement administrator, the employer-side taxes here may be less, but not more, than $1,817.23 ($12,576 * 14.45%) as 50% of the Net Settlement Amount will be allocated as wages. (Stipulation at ¶ IX(30)).

The Net Settlement Value, or "NSV" shall be allocated to collective action members who opted in based on the number of bonus adjustments each collective action member received, *i.e.*, the total bonus adjustments of all 367 members will be added up and used as a divisor to each collective action member's bonus adjustments multiplied against the NSV. (Stipulation at ¶ X(31)). The Settlement Administrator shall obtain the data from Defendant, perform the calculations, and mail the settlement payments. (*Id.* at ¶ X(32)-(33)). Collective action members shall have 180 days to cash their checks and any checks uncashed after 180 days shall be distributed to the *cy pres* nonprofit, Legal Aid at Work. (*Id.* at ¶ X(34)).

The Parties have agreed to include a notice to accompany the checks to collective action members, which describes the settlement, the release, and the formula. (Dakak Decl. ¶ 12, **Exh. A**).

As for the release, the Parties have negotiated a narrow release, which is limited to the regular rate and late bonus adjustment violations alleged herein.

> In exchange for the consideration, undertakings, and covenants undertaken by ConAm in the Agreement, including but not limited to the payment of the Member Payments, the Settlement Collective and each member thereof releases, discharges, and covenants not to sue ConAm and all of its respective past and present employees, directors, officers, attorneys, representative, insurers, agents, parents, subsidiaries, affiliates, related companies, predecessors, successors, lessees, and assigns, and any entity that could be jointly liable with any of these (individually and collectively "the ConAm Releasees") with respect to and from any and all claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, wages, obligations, debts, expenses, attorneys' fees, damages, judgments, orders and liabilities of whatever kind or nature in law, equity or otherwise (collectively, "Released Claims"), whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden, which: (i) **are or at any time were alleged in the Cuevas Action, i.e., failure to pay overtime based on an alleged miscalculation of the regular rate of pay under 29 U.S.C. § 201, et seq., and failure to timely pay overtime wages in violation of 29 C.F.R. § 778.106**; (ii) pertain to fines, penalties, wages, premium wages, interest, restitution, liquidated damages, declaratory relief, and/or injunctive relief **alleged** due and owing by virtue of the claims released in subsections (i) and/or (ii), supra; and/or (iii) pertain to

claims for attorneys' fees and/or attorneys' costs/expenses allegedly due and owing by virtue of the claims released in subsections (i) and (ii), supra; provided, however, that this Paragraph 36 shall not release any California state law claims currently set forth in *Ricks v. ConAm Management Corp.*, Case No. 37-2020-00001430-CU-OE-CTL (San Diego Superior Court) (the "Ricks Class Action"), though the Settling Parties agree that payments made to members of the Settlement Collective may be offset against any payments ordered or agreed to in the Ricks Class Action made to the same individual to avoid double counting. Moreover, **the Parties understand and agree that this Paragraph 36 does not apply to any claims for alleged non-payment of minimum and/or overtime wages for working off the clock, including the above referred to offset**.

(Stipulation at ¶ XI(36) (emphasis added)).

As the Court can see, the release specifically excludes: any claims for alleged off-the-clock unpaid minimum and overtime wages, any other claim not pled or alleged in the operative complaint, and explicitly excludes a pending class action filed in San Diego Superior Court.

## IV. ARGUMENT

### A. Legal Standard

If a proposed collective action settlement "reflect[s] a reasonable compromise over contested issues," it should be approved. *Lee v. The Timberland Co.*, 2008 U.S. Dist. LEXIS 108098, at *5 (N.D. Cal. June 19, 2008).[3] "In reviewing a proposed settlement, "a court must determine whether the settlement is a fair and reasonable resolution of a bona fide dispute." *Lee*, 2008 U.S. Dist. LEXIS 108098, at *5 (citing *Yue Zhou v. Wang's Restaurant*, 2007 U.S. Dist. LEXIS 60683, at *1 (N.D. Cal. Aug. 8, 2007)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Khait*, 2010 U.S. Dist. LEXIS 4067, at *19.

---

[3] Approval of an FLSA collective action settlement does not require the full Rule 23 settlement analysis, because an FLSA settlement "does not implicate the same due process concerns as does a Rule 23 settlement." *See, e.g.*, *Khait v. Whirlpool Corp.*, 2010 U.S. Dist. LEXIS 4067, at *19 (E.D.N.Y. Jan. 20, 2010).

### B. This Settlement Constitutes A Fair And Reasonable Resolution Of A Bona Fide Dispute.

As the Court is well aware, the proposed Settlement comes at the end of over two years of vigorously contested litigation. During the litigation, the parties have contested: (1) the scope of discovery; (2) whether the FLSA class should be conditionally certified; (3) whether individuals that signed arbitration agreements should be excluded from the opt-in collective; and (4) the merits of the claims themselves. (Dakak Decl. ¶ 9; Hyun Decl. ¶ 8). Moreover, Plaintiff's counsel conducted numerous depositions, retained two expert witnesses, and prevailed on collective certification. (*Id.*) Further, the Parties engaged in numerous meet and confer sessions in an attempt to resolve discrete discovery disputes that occurred during the course of litigation, held multiple discovery conferences with Magistrate Lopez, and briefed discovery disputes before Judge Lopez and before this Court. (*Id.*)

The Parties also contested the central question of whether Defendant correctly calculated the regular rate of pay and whether Defendant had the capability to pay bonus adjustments sooner than Defendant's existent systems allowed. (Dakak Decl. ¶ 10). Defendant contended that it correctly calculated the regular rate of pay and that it timely paid the overtime adjustments – and, in fact, overpaid the adjustments in most pay periods. (*Id.*) Moreover, Defendant would have argued that liquidated damages are not warranted, as Defendant did pay overtime adjustments based on the bonuses at issue, but the Parties disputed whether Defendant's formula for calculating the regular rate was lawful. (*Id.*) Thus, Plaintiff prevailing was never certain. (*Id.;* Hyun Decl. ¶ 9). Nevertheless, the Parties have achieved a settlement which provides nearly 100% post employer side taxes in recovering for the collective action members.

Significantly, the proposed Settlement was reached only after two years of litigation, one full day of an unsuccessful mediation before Judge Layne Phillips, and another full day of a settlement conference before Magistrate Judge William Gallo, who issued a mediator's proposal, which the Parties accepted. (Dakak Decl. ¶ 11; Dakak

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT PURSUANT TO THE FAIR LABOR STANDARDS ACT; AND MEMO. OF P'S AND A'S IN SUPPORT

Decl. ¶ 7).

## C. The Proposed Settlement Is Fair and Reasonable.

The proposed payment of $310,000 under the Settlement is fair and reasonable. The Settlement provides 100% relief before employer-side taxes to the Opt-Ins and eliminates the inherent risk of continued litigation. Under the Settlement, each Opt-In's recovery is based on the number of bonus adjustments paid to each collective action member. This will result in an *average* net recovery (after attorneys' fees and costs are subtracted) of approximately $89.00 per Opt-In before employer side taxes are deducted ($89.00 is obtained by dividing 367 from $25,152). Again, as set forth in the expert report of Dr. Song, this accounts for almost 100% of the $25,152 exposure. Given the relatively small damages at issue and the corresponding narrowly tailored release, the Parties believe that this settlement is fair, adequate and reasonable. The Settlement calls for Opt-Ins to receive their Settlement checks along with a clear, detailed notice describing their rights and options.

## D. The Settlement's Proposed Named Plaintiff Service Awards Are Fair And Reasonable.

The Settlement provides for a service award of $5,000 to Plaintiff in recognition for the time she spent, the risks that she incurred, and the results she obtained on behalf of her fellow Opt-Ins. Plaintiff provided invaluable information and spent considerable amount of time in the prosecution of this action, including conducting numerous telephonic conferences with her counsel, attending the settlement conference, reviewing pleadings, and answering discovery related questions. (Dakak Decl. ¶ 13). The amount of the service awards contemplated by the Settlement is consistent and reasonable with awards given in comparable cases. *See Stevens v. Safeway Inc.*, 2008 U.S. Dist. LEXIS 17119, at *39 (C.D. Cal. Feb. 25, 2008) (approving enhancement awards of $20,000 and $10,000 in an FLSA collective action settlement); *Hens v. ClientLogic Operating Corp.*, 2010 U.S. Dist. LEXIS 139126, at *6 (W.D.N.Y. Dec. 21, 2010) (approving service awards of $7,500 each for six named plaintiffs in FLSA collective action

settlement); *see also Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476, at *51 (N.D. Cal. Jan. 27, 2007) (approving enhancement awards of $25,000 each for four named plaintiffs in a Rule 23 wage and hour settlement); *Curtis-Bauer v. Morgan Stanley & Co. Inc.*, 2008 U.S. Dist. LEXIS 91465, at *3 (N.D. Cal. Oct. 22, 2008) (approving a $25,000 service award to named plaintiff in employment discrimination class action settlement).

### E.  The Settlement's Proposed Allocation For Plaintiffs' Counsel Attorneys' Fees And Costs Award Is Reasonable.

In an FLSA settlement, an award of reasonable attorneys' fees is required. *Lee*, 2008 U.S. Dist. LEXIS 108098, at *4 ("The FLSA also requires that a settlement agreement include an award of reasonable fees.") (citing 29 U.S.C. § 216(b)). The Settlement provides for Plaintiffs' attorneys' fees of $105,421.33, and litigation costs in the amount of $169,676.67. These amounts were negotiated as part of the $310,000 Gross Settlement Value. The Parties first allocated the GSV to provide for 100% of the exposure analysis of $25,152 (minus payroll taxes), and then deducted attorneys' fees, litigation costs, Plaintiff's enhancement award, and the Settlement Administrator's costs.

As set forth in the concurrently filed declarations of Plaintiff's attorneys, they have spent 866.50 hours litigating this matter (specifically 593.60 hours for Kesselman Brantly & Stockinger and 272.9 hours for Hyun Legal), for a total lodestar of $557,780.00 (specifically $345,605.00 for Kesselman Brantly & Stockinger and $212,175.00 for Hyun Legal), which far exceeds the $105,421.33 in attorneys' fees sought. (Dakak Decl. ¶ 14, **Exh. C**; Declaration of Dennis S. Hyun ("Hyun Decl.") ¶ 10, **Exh. A**). Plaintiff's Counsel have spent $169,676.67 in out-of-pocket costs (specifically $90,431.07 for Kesselman Brantly & Stockinger and $79,245.60 for Hyun Legal). (Dakak Decl. ¶ 15, **Exh. D**; Hyun Decl. ¶ 13, **Exh. B**). Under the Ninth Circuit standard, both components of the Settlement are reasonable.

First, the fee is reasonable based on Plaintiff's counsel lodestar, which is only 0.19 the fee requested (or approximately 1/5 of the fees requested), which results in a

negative multiplier.

Courts in this Circuit apply the lodestar method to determine what constitutes a reasonable attorney's fee under federal fee shifting statutes. The lodestar is calculated by multiplying a reasonable hourly rate for the work performed by the number of hours reasonably expended on the litigation. *Costa v. Commissioner of Social Sec. Admin.*, 690 F.3d 1132, 1136 (9th Cir. 2012).

Under the lodestar method, Plaintiffs' counsel is entitled to recover based on a reasonable hour rate that "is determined pursuant to the prevailing market rates in the relevant community. *Hartless v. Clorox Co.*, 273 F.R.D. 630, 644 (S.D. Cal. 2011), citing *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001). The Party seeking the rate has the burden of establishing it is reasonable and can do so through affidavits and offering cases from this district approving rates. *Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, 2009 WL 160235, 4 -5 (S.D. Cal. July 2009) citing *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

In using the lodestar method, the "calculation need entail neither mathematical precision nor bean-counting" and is not intended to be a "full-blown lodestar inquiry." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005); *Third Circuit Task Force Report Selection of Class Counsel*, 208 F.R.D. 340, 422 (2002) ("We emphasize …the lodestar is at most a relevant factor if it …is used at all, and it should not receive exaggerated importance in assessing the appropriate fee.").

As set forth in the Declarations of Plaintiff's counsel, they have been approved at their hourly rates of $700 and $750, respectively, since 2019. (Dakak Decl. ¶ 14; Hyun Decl. ¶ 12). These rates are consistent with the hourly rates charged by similarly experienced attorneys in the community. *Ketchum v. Moses*, 24 Cal.4th 1122, 1133 (2001); *Children's Hospital and Med. Center v. Belshe*, 97 Cal. App. 4th 740, 783 (2002) (affirming rates that were "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work").

Plaintiff's counsel also incurred reasonable hours in prosecuting this case. Under

California law, counsel are entitled to compensation for all hours reasonably spent on the matter. *Ketchum vs. Moses*, 24 Cal. 4th 1122, 1133 (2001). Reasonableness of hours is assessed by "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics, and the trial itself...." *Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal. App. 4th 440, 447 (2000). To the extent that any argument is made that the time spent was duplicative, the way in which Plaintiff's counsel work is for each attorney to handle a task and for the other attorneys to review and revise the work, which is identical to the way defense firms staff and handle cases. More importantly, as noted by the Ninth Circuit in *Stetson v. West Publishing Corp.*, Case No. 13-57061, at *13 (9th Cir. May 11, 2016), "some amount of duplicative work is 'inherent in the process of litigating over time.'" *Id.* (Citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)). As discussed above, Plaintiff's counsel actually incurred $557,780.00 in attorneys' fees, which results in a negative multiplier of 0.19. This further supports approval of Plaintiff's attorneys' fees. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *16 (N.D. Cal. 2007).

The fee is also supported here because Defendant changed its practices as a result of Plaintiff's lawsuit. Specifically, on or about the November 22, 2019 payroll cycle, Defendant changed its regular rate formula to use an employee's actual hours worked to calculate the bonus due to this lawsuit, when previously Defendant used an assumed 40-hour workweek for the formula. (Dakak Decl. ¶ 16). On October 7, 2019 due to this lawsuit, Defendant also implemented a new payroll process that processes its "Bonus-ADJ" during the same pay period of the corresponding bonus. (Dakak Decl. ¶ 16). Thus, this Court should deem Plaintiff the prevailing party to warrant an award of the fees requested.

To qualify as a prevailing party, a plaintiff must meet two criteria: (1) the plaintiff "must achieve a 'material alteration of the legal relationship of the parties,'" and (2) "that alteration must be 'judicially sanctioned.'" *See Carbonell v. I.N.S.*, 429

F.3d 894, 898 (9th Cir. 2015) (quoting *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604-605 (2001). "[A] judgment on the merits or a consent decree" is not required to meet this standard; rather all that is required is a material alteration of legal relationships to which a "judicial imprimatur" has been given. *See Carbonell*, 429 F.3d at 899. Thus, a litigant has "prevailed" and is entitled to attorneys' fees if the litigant "obtains a court order incorporating an agreement that includes relief the plaintiff sought in the lawsuit." *Labotest, Inc. v. Bonta*, 297 F.3d 892, 895 (9th Cir. 2002).

Second, the Settlement's provision for reimbursement of costs is appropriate. Courts have held that "[r]easonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *In re Media Vision Tech Sec. Litigs.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)); *see also Hens v. ClientLogic Operating Corp.*, 2010 U.S. Dist. LEXIS 139126, at *6-7 (W.D.N.Y. Dec. 21, 2010). To be reimbursable, requested costs must be relevant to the litigation and reasonable in amount. *In re Media Vision*, 913 F. Supp. at 1366; *cf. In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (holding that costs such as filing fees, photocopy cots, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in class action litigation). To date, counsel have spent $169,676.67 in out-of-pocket costs on items such as deposition transcripts, experts, and mediation fees. (Dakak Decl., ¶ 15, **Exh. D**; Hyun Decl. ¶ 13, **Exh**. **B**). Pursuant to the Settlement Agreement, counsel may seek up to $169,676.67 in costs. (Stipulation ¶ VIII(23)). These costs were necessary to the prosecution of the litigation and were incurred reasonably. *Id*. Accordingly, these costs are reimbursable.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court approve this FLSA Collection Action Settlement, which includes payments to the 367 Opt-Ins

according to the Settlement Agreement, the Parties agreed to notice to accompanying the checks to collective action members, assignment of Settlement Administrator duties to Phoenix Settlement Administrators and payment for its costs, a Service Award Payment to the Plaintiff, and attorneys' fees and cost payments to Plaintiff's Counsel.

Dated:  November 6, 2020

KESSELMAN, BRANTLY & STOCKINGER LLP
HYUN LEGAL, APC


By: _____*s/ Majed Dakak*_____
Majed Dakak
Dennis S. Hyun

Attorneys for Plaintiff and the Collective