UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH CUEVAS, as an individual and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>CONAM MANAGEMENT CORPORATION, a California corporation; and does 1 through 10, inclusive,<br><br>                                    Defendants. | Case No.:  18cv1189-GPC(LL)<br><br>**JUDGMENT AND ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT**<br><br>**[Dkt. No. 82.]** |

Before the Court is Plaintiff's unopposed motion for approval of the settlement under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  (Dkt. No. 82.)  A hearing was held on February 5, 2021.  (Dkt. No. 85.)  Based on the reasoning below, the Court GRANTS Plaintiff's unopposed motion for approval of the collective action settlement.

## Background

On September 6, 2019, Plaintiff Elizabeth Cuevas ("Plaintiff") filed the operative first amended complaint ("FAC") on behalf of herself and other similarly situated

employees of Defendant ConAm Management Corporation ("Defendant" or "ConAm") alleging two causes of action for its failure to pay overtime pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and failure to timely pay overtime wages as required by 29 C.F.R. § 778.106.  (Dkt. No. 48, FAC.)  Specifically, Plaintiff claims that Defendant failed to calculate non-discretionary bonuses into her regular rate of pay in assessing overtime pay and failed to timely pay those overtime wages.

Plaintiff was employed by ConAm, a property management and real estate investment company as a non-exempt leasing agent/professional at one of Defendant's properties located in Reno, Nevada.  (*Id.* ¶ 1.)  In her position as a Leasing Professional, she, as well as other employees, received non-discretionary bonuses from the Lease and Renewal Bonus Program, also referred to as the "Winner's Circle" program.  (*Id.* ¶ 11.)  Other non-exempt employees, such as Community Managers and Business Managers, are also subject to other non-discretionary bonuses.  (*Id.* ¶ 1.)

On October 21, 2019, the Court granted Plaintiff's motion for conditional certification of collective action for the following class and subclass,

> All persons who are or have been employed by the Company in the United States as non-exempt employees at any time from June 6, 2015, through the present, who received overtime pay and non-discretionary incentive pay, including without limitation, bonuses (the "Class").

and

> All persons who are or have been employed by the Company in the United States as non-exempt employees at any time from June 6, 2015, through the present, who received overtime pay and non-discretionary incentive pay from the bonus program referred to as the "Winner's Circle" bonus program (the "Winner's Circle Subclass").

(Dkt. No. 59 at 16.)  On November 4, 2019, the Court approved the notice and consent-to-join forms.  (Dkt. No. 67.)  Three hundred and sixty-seven (367) individuals timely opted-in.  (Dkt. No. 83-1, Dakak Decl. ¶ 8.)  Among them are eighty-eighty (88) individuals who had signed arbitration agreements.  (*Id.*)

2

Plaintiff now moves for the Court to approve the Settlement Agreement in the gross settlement amount of $310,000 ("Gross Settlement Value"). The $310,000 payment will consist of 1) payment to the collective of $25,152 (less any applicable employer-side payroll taxes); 2) $105,421.33 for Collective Active Counsel's attorneys' fees; 3) $169,676.67 for Collective Action Counsel's[1] litigation costs; 4) $5,000 to Plaintiff as an enhancement award; and 5) $4,750 to Phoenix Settlement Administrators for the administration costs of this settlement. (Dkt. No. 82, Jt. Stip. at ¶¶ 10, 23, 24, 28(a)-(e).) The Net Settlement Amount is estimated to be $25,152.00 before any applicable employer-side taxes, and after deducting for employer-side taxes the Net Settlement Amount is expected to be $23,334.77. The members of the collective action will have 180 days to cash the check mailed to them and the checks will become null and void after 180 days from the date of initial mailing of the checks. (*Id.* ¶ 34.) Any amounts not cashed will be donated *cy pres* to Legal Aid to Work. (*Id.*)

## Discussion

**A.   Legal Standard**

The Fair Labor Standards Act of 1938 was enacted for the purpose of protecting all covered workers from "substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 739 (1981). "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Since an employee cannot waive claims under the FLSA, an FLSA claim "may not be settled without supervision of either the Secretary of Labor or a district court." *Kerzich v. Cnty. of Tuolomne*, 335 F. Supp. 3d 1179, 1183 (E.D. Cal. 2018) (citing *Barrentine*, 450 U.S. at 740).

---

[1] Collective Action Counsel include Majed Dakak of Kesselman Brantly Stockinger LLP and Dennis Hyun of Hyun Legal, APC. (Dkt. No. 82, Jt. Stip. ¶ 16.)

18cv1189-GPC(LL)

In reviewing a FLSA settlement, a district court must determine whether the settlement represents a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dept. of Labor, Emp't Standards Admin.*, *Wage & Hour Div.,* 679 F.2d 1350, 1355 (11th Cir. 1982). "A bona fide dispute exists when there are legitimate questions about 'the existence and extent of Defendant's FLSA liability.'" *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (quoting *Ambrosino v. Home Depot. U.S.A., Inc.,* Civil No. 11cv1319 L(MDD), 2014 WL 1671489, at *1 (S.D. Cal. Apr. 28, 2014)). There must be "some doubt . . . that the plaintiffs would succeed on the merits through litigation of their [FLSA] claims." *Id.*

Once the district court determines that a bona fide dispute exists, it must then determine whether the settlement is fair and reasonable by looking to the totality of the circumstances and balancing such factors as: "(l) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion." *Id.* at 1173 (collecting cases). "In considering these factors under a totality of the circumstances approach, a district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.*

**B.   Fair and Reasonable Settlement**

   **1.   Bona Fide Dispute**

"A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Kerzich v. Cnty. of Tuolomne*, 335 F. Supp. 3d 1179, 1184 (E.D. Cal. 2018) (quoting *Selk*, 159 F. Supp. 3d at 1172). A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because to do so would shield employers from the full cost of complying with the statute. *Selk,* 159 F. Supp. 3d at 1172.

In this case, the parties contested the central question of whether Defendant correctly calculated the regular rate of pay and whether Defendant had the capability to pay bonus adjustments sooner than Defendant's existent systems allowed.  (Dkt. No. 83-1, Dakak Decl. ¶ 10).  On one hand, Plaintiff argued that Defendant did not include bonus payments in employees' regular rate of pay for purposes of calculating overtime and those wages were not timely paid.  On the other hand, Defendant contended that it correctly calculated the regular rate of pay and that it timely paid the overtime adjustments, and in fact, overpaid the adjustments in most pay periods.  (*Id.*)  Defendant also would have argued that liquidated damages were not warranted, as Defendant paid overtime adjustments based on the bonuses at issue.  (*Id.*)  In addition, the parties disputed whether Defendant's formula for calculating the regular rate was lawful.  (*Id.*)  Furthermore, the parties contested whether individuals that signed arbitration agreements should be excluded from the opt-in collective.  (*Id.* ¶ 9.)  These disagreements demonstrate that Plaintiff was not certain to prevail.  Therefore, the Court finds that this litigation reflects a bona fide dispute between the parties over potential liability under the FLSA.

### 2.     Fair and Reasonable

#### a     Plaintiff's Range of Possible Recovery

A court considers a plaintiff's range of potential recovery to ensure that the settlement amount is reasonable in relation to the true settlement value of the claims.  *Selk,* 159 F. Supp. 3d at 1174 (citations omitted).

In this case, the Settlement Agreement provides 100% relief before employer-side taxes to the opt-ins and eliminates the inherent risk of continued litigation, or in other words, nearly 100% post employer side taxes in recovery for the collective action members.  Dr. Chen Song, Plaintiff's damages expert, calculated the total unpaid bonus overtime compensation including interest from June 6, 2015 to June 19, 2020 to be $15,899 and with liquidated damages the total recovery would be $25,152.  (Dkt. No. 83-

1, Dakak Decl., Ex. B at 33.[2])  Thus, on a pretax basis, the Net Settlement Amount of $25,152.00 is 100% of the maximum exposure (and slightly less than 100% of the total liability after accounting for employer-side taxes) for the 367-member collective.

Under the Settlement Agreement, each settlement collective member's recovery is based on the number of bonus adjustments paid to each member during that member's employment at ConAm.  (Dkt. No. 82, Jt. Stip. ¶ 31.)  This will result in an average net recovery of about $89.00 ($25,152 divided by 367) per opt-in before employer side taxes are deducted.  (Dkt. No. 83 at 14.)  In addition, as a result of the lawsuit, Defendant has changed some of its payroll practices in line with complaints made during the litigation that has affected each member of the collective action settlement.  (Dkt. No. 83-1, Dakak Decl. ¶ 16.)   Thus, because opt-ins will receive nearly 100% recovery and Defendant has adjusted its payroll process, the Court concludes that this factor supports approval of the settlement.

### b.    Stage of Proceedings and Amount of Discovery Completed

The Court next assesses the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement.  *Selk,* 159 F. Supp. 3d at 1177 (citing *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014)).

Prior to settling the case, both parties were engaged in vigorous contested litigation concerning the scope of discovery, whether the FLSA class should be conditionally certified, whether individuals that signed arbitration agreements should be excluded from the opt-in collective, and the merits of the claims themselves.  (Dkt. No. 83-1, Dakak Decl. ¶ 9; Dkt. No. 83-2, Hyun Decl. ¶ 8.)  Specifically, Plaintiff's counsel conducted numerous depositions and retained two expert witnesses.  (*Id.*)  Further, the parties engaged in numerous meet and confer sessions in an attempt to resolve discrete discovery

---

[2] Page numbers are based on the CM/ECF pagination.

disputes that occurred during the course of litigation, held multiple discovery conferences with Magistrate Judge Lopez, and briefed discovery disputes before Judge Lopez and before this Court.  (*Id.*)  The proposed Settlement was reached after two years of litigation, one full day of an unsuccessful mediation before Judge Layne Phillips, and another full day of a settlement conference before Magistrate Judge William Gallo, who issued a mediator's proposal, which the parties accepted.  (Dkt.  No. 83-1, Dakak Decl. ¶ 11; Dkt. No. 83-2, Hyun Decl. ¶ 7.)  As such, the Court finds that the parties have engaged in meaningful discovery and this factor supports approval.

### c.    Seriousness of the Litigation Risks

Settlement is favored where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all."  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015).  If a settlement in an FLSA lawsuit reflects a reasonable compromise over issues that are actually in dispute, the "court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'"  *Selk*, 159 F. Supp. 3d at 1173.

While Plaintiff believes her claims are meritorious, she acknowledges that Defendant had valid defenses, and in fact, Defendant asserted it overpaid overtime adjustments in most pay periods.  (Dkt. No. 83-1, Dakak Decl. ¶ 10.)  Moreover, there was also the additional disputed issue whether employees that signed arbitration agreements should be excluded from the opt-in collective.  Therefore, the seriousness of the litigation risks weigh in favor of approval of the Settlement Agreement.

### d.    Scope of Release Provision in the Settlement Agreement

Courts review the scope of any release provision in a FLSA settlement to ensure that class members are not pressured into forfeiting claims, or waiving rights, unrelated to the litigation, and are especially skeptical of release provisions that require employees to forfeit claims that are designed to advance public values.  *Selk,* 159 F. Supp. 3d at 1178 (citing *Luo v. Zynga, Inc.*, No. 13–cv–00186 NC, 2014 WL 457742 at *3 (N.D. Cal. Jan. 31, 2014)).  The underlying concern is that an overly wide-reaching release of claims

may evince an attempt by an employer to use employee wages as a bargaining chip to extract valuable concessions from the employees.  *Id.*  A release in an FLSA settlement where members opt in in order to receive only unpaid wages and related damages should generally be limited to the specific claims at issue in the lawsuit.  *Id.*

Here, the applicable release provision in the Settlement Agreement provides:

In exchange for the consideration, undertakings, and covenants undertaken by ConAm in the Agreement, including but not limited to the payment of the Member Payments, the Settlement Collective and each member thereof releases, discharges, and covenants not to sue ConAm and all of its respective past and present employees, directors, officers, attorneys, representative, insurers, agents, parents, subsidiaries, affiliates, related companies, predecessors, successors, lessees, and assigns, and any entity that could be jointly liable with any of these (individually and collectively "the ConAm Releasees") with respect to and from any and all claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, wages, obligations, debts, expenses, attorneys' fees, damages, judgments, orders and liabilities of whatever kind or nature in law, equity or otherwise (collectively, "Released Claims"), whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden, which: **(i) are or at any time were alleged in the Cuevas Action, i.e., failure to pay overtime based on an alleged miscalculation of the regular rate of pay under 29 U.S.C. § 201,** *et seq***., and failure to timely pay overtime wages in violation of 29 C.F.R. § 778.106;** (ii) pertain to fines, penalties, wages, premium wages, interest, restitution, liquidated damages, declaratory relief, and/or injunctive relief alleged due and owing by virtue of the claims released in subsections (i) and/or (ii), supra; and/or (iii) pertain to claims for attorneys' fees and/or attorneys' costs/expenses allegedly due and owing by virtue of the claims released in subsections (i) and (ii*), supra;* provided, however, that this Paragraph 36 shall not release any California state law claims currently set forth in *Ricks v. ConAm Management Corp*., Case No. 37-2020-00001430-CU-OE-CTL (San Diego Superior Court) (the "Ricks Class Action"), though the Settling Parties agree that payments made to members of the Settlement Collective may be offset against any payments ordered or agreed to in the Ricks Class Action made to the same individual to avoid double counting. Moreover, the Parties understand and agree that this Paragraph 36 does not apply to any claims for alleged non-payment of minimum and/or overtime wages for working off the clock, including the above referred to offset. The definition of Released Claims is intended to be comprehensive in nature and to include all claims

and potential claims against the ConAm Releasees as set forth above to the maximum extent permitted at law. Nothing in this paragraph should be interpreted as a waiver of claims that cannot be waived as a matter of law.

(Dkt. No. 82, Jt. Stip. ¶ 36 (emphasis added and underling in original.)  The release is narrow and limited to releasing the FLSA claims alleged in this action and specifically excludes any claims for alleged off-the-clock, unpaid minimum and overtime wages, any other claim not pled or alleged in the operative complaint, and explicitly excludes a pending class action filed in San Diego Superior Court.  The Court concludes that the narrowly tailored release satisfies the concerns FLSA.

### e.   Experience and Views of Counsel and Opinions of Participating Plaintiffs

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases."  *Larsen v. Trader Joe's Co*., Case No. 11–cv–05188–WHO, 2014 WL 340453 1, *5 (N.D. Cal. Jul. 11, 2014).

Here, Collective Action Counsel and Plaintiff on behalf of the Settlement Collective believe that the terms are fair and reasonable.  (Dkt. No. 82, Jt. Stip. ¶ 39.)  Mr. Dakak and Mr. Hyun are both experienced attorneys with years of experience practicing in labor and employment law as well as complex litigation.  (*See* Dkt. No. 83-1, Dakak Decl. ¶¶ 3, 4; Dkt. No. 83-2, Hyun Decl. ¶¶ 3-6.)  The views of experienced counsel and Plaintiff weigh in favor of approval of the settlement.

### f.   Possibility of Fraud or Collusion

"The likelihood of fraud or collusion is low. . . [when] the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator."  *Slezak v. City of Palo Alto*, Case No. 16-CV-03224-LHK, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017) (citation omitted).  Here, there is no indication of the possibility of fraud or collusion because settlement negotiations were presided over and facilitated by a magistrate judge of this court.   There is nothing on the face of the record to suggest

9

plaintiff's counsel "allowed the pursuit of their own self-interests and that of certain class members to infect the negotiation." *In re Bluetooth Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). The Court concludes there is no indication of fraud or collusion.

In sum, having considered the relevant factors and the totality of the circumstances, the Court concludes that the Settlement Agreement is a fair and reasonable resolution of a bona fide dispute of the FLSA provisions, and GRANTS Plaintiff's unopposed motion for approval of collective action settlement.

## C. Incentive Award

A district court has discretion to award an incentive payment to the named plaintiffs in a FLSA collective action to compensate them for work done on behalf of the class. *Selk*, 159 F. Supp. 3d at 1181. In reviewing whether an incentive award is appropriate, the court should consider, among other things, "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). The awards "are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employers." *Bellinghausen*, 306 F.R.D. at 267 (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)).

The Settlement provides a $5,000 service award to Plaintiff in recognition of the time she spent, risks she incurred and the results she obtained on behalf of her fellow opt-ins. (Dkt. No. 82-1, Dakak Decl. ¶ 13.) She provided invaluable information and spent a significant amount of time prosecuting the action including attending numerous telephonic conferences with her counsel, attending a settlement conference, reviewing pleadings and answering questions related to discovery. (*Id.*) Her decision to file this action resulted in substantial benefits, nearly 100% of the potential recovery, on behalf of the class as well as changes to ConAm's payroll policies. The Court exercises its

discretion and GRANTS Plaintiff's request for an incentive payment of $5,000 as reasonable and appropriate.

**D.      Attorney's Fees**

Plaintiff's counsel seek attorneys' fees in the amount of $105,421.33.  Although the actual lodestar for both Plaintiff's counsel amount to $557,780.00, they are only seeking $105,421.33 which represents a negative multiplier of the actual total lodestar amount.

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award."  *Selk*, 159 F. Supp. 3d at 11870 (quoting *Wolinsky v. Scholastic Inc*., 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012)); *see also* 29 U.S.C. § 216(b) (providing that, in a FLSA action, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action").  At the fee-setting stage, the interests of the plaintiffs and their attorneys diverge and described as "adversarial"; therefore, the district court assumes a fiduciary role for the collective action plaintiffs.  *See In re Mercury Interactive Corp. Sec. Litig*., 618 F.3d 988, 994 (9th Cir. 2010).

In a case involving a common fund, a district court has discretion to apply either the percentage of the fund method or the lodestar method.  *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002); *In re Wash. Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1295-96 (9th Cir. 1994).  Once a method is selected, the Ninth Circuit encourages district courts to cross-check with the other method in order to guard against an unreasonable result.  *In re Bluetooth*, 654 F.3d 944 ("Thus, even though the lodestar method may be a perfectly appropriate method of fee calculation, we have also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method."); *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1050 (9th Cir. 2002) ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the

percentage award"); *but see Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1126 (9th Cir. 2020) (citing *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 571 (9th Cir. 2019) (courts are not required to perform a "crosscheck" using the percentage method given difficulty in measuring dollar value of injunctive relief.)).

Collective Action Counsel justify their attorneys' fee request under the lodestar method. Counsel explain that the actual total lodestar amount to $557,780.00 ($345,605.00 for Kesselman Brantly Stockinger and $212,175.00 for Hyun Legal) which far exceeds the amount they seek of $105,421.33. The lodestar is calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

### 1.   Hourly Rates

Kesselman Brantly Stockinger seek an hourly rate of $700 per hour for Dakak, a twelve-year barred attorney who has experience in labor and employment and complex litigation cases, $600 per hour for two attorneys with over 10 years of experience, $450 per hour for a sixth year associate, Ryan Davis, and $200 per hour for paralegals. (Dkt. No. 83-1, Dakak Decl. ¶ 14.) Hyun Legal seeks an hourly rate of $750 per hour for Dennis Hyun, a shareholder of Hyun Legal and an eighteen-year barred attorney who has been practicing employment law and wage and hour matters including class actions and individual actions. (Dkt. No. 83-2, Hyun Decl. ¶ 12.)

"[R]ate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of American v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The "prevailing market rates in the relevant community" takes into consideration "the experience, skill, and reputation of the attorney." *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005). Fee applicants have the burden of producing evidence that their requested fees are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir.2008) (internal quotation marks omitted). "[T]he

relevant community is the forum in which the district court sits." *Id.* at 979 (Northern District of California was the relevant community). "Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community . . .are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

In support, both counsel rely on the hourly rates they were awarded in the Northern and Central Districts of California and in Santa Clara, Los Angeles and San Bernardino County Superior Courts. (Dkt. No. 83-2, Dakak Decl. ¶ 12; Dkt. No. 83-1, Hyun Decl. ¶ 14.) However, the relevant community to determine hourly rates is the Southern District of California. Therefore, counsel has not shown that their rates are prevailing in the relevant community.

Nonetheless, after the Court's review of caselaw, Plaintiff's counsel fees are in line with fees awarded in the Southern District of California. *See In re Easysaver Rewards Litig.*, No. 09-CV-02094-BAS-WVG, 2020 WL 2097616, at *13-16 (S.D. Cal. May 1, 2020) (finding that an hourly rate of $850.00 and $675.00 for partners, $675.00 and $390.00 for associates, $315.00 and $125.00 for staff, and a blended rate of $668 per hour was reasonable in the district); *Lopez v. Mgmt. & Training Corp.*, No. 17CV1624 JM(RBM), 2020 WL 1911571, at *8-9 (S.D. Cal. Apr. 20, 2020) (finding that an hourly rate of $900.00 and $600.00 for partners, $500.00 for an associate, and $200.00 and $175.00 for staff was reasonable in the district); *Vasquez v. Kraft Heinz Foods Co.,* No. 3:16-CV-2749-WQH-BLM, 2020 WL 1550234, at *7 (S.D. Cal. Apr. 1, 2020) (finding that rates from $175.00 per hour for paralegals and $325.00 per hour for a second-year associate to $900.00 per hour for a forty-sixth-year partner were reasonable).

Accordingly, the Court concludes that the hourly rates sought by counsel are reasonable.

## 2.   Reasonableness of Hours

Dakak states that his firm has incurred 593.60 hours on this case plus 10 additional hours to include attending the hearing on the approval and responding to any collective

action member inquiries.  (Dkt. No. 83-1, Dakak Decl. ¶ 14; *id.*, Ex. C.)  Hyun states he spent 282.90 hours of work.  (Dkt. No. 83-2, Hyun Decl. ¶ 12; *id.*, Ex. A.[3])  Based on the Court's review of the number of hours spent during two years of litigation, the Court finds the number of hours to be reasonable.

Plaintiff's attorneys spent a total of 866.50 hours litigating the case for a total lodestar of $557,780 ($345,605 for Kesselman Brantly Stockinger and $212,175.00 for Hyun Legal); however, Collective Action Counsel seeks only the amount of $105,421.33, which is .19 of the total lodestar amount and represents a negative lodestar multiplier. (Dkt. No. 83 at 15-16.)  The Court finds the fee award is reasonable based on the excellent results obtained, the experience and skill of counsel, and the risk of not prevailing.

As a cross check, the counsel's fee request is also reasonable under the percentage of the fund.  The fee award sought of $105,421.33 amounts to 34% of the $310,000 Gross Settlement Value and is within the percentage range that courts have allowed in the Ninth Circuit.  *See Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3 % of total settlement value"); *Hopkins v. Stryker Sales Corp*., No. 11-2786, 2013 WL 2013 WL 496358, at *1 (N.D. Cal. Feb. 6, 2013) (acknowledging same and awarding 30%); *In re Activision Sec. Litig*., 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("[a] review of recent reported cases discloses that nearly all common fund awards range around 30%").

Moreover "[i]n awarding percentages of the class fund, courts frequently take into account the size of the fund."  *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008).  It is established that 25% of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage method, with 20 to 30% as

---

[3] The Court notes that Hyun Legal's breakdown of hours spent does not include any dates which would have been helpful to the Court.  (Dkt. No. 83-2, Hyun Decl., Ex. A.)  However, because the description of work relates to tasks involved in this litigation and because the amount counsel seeks is a percentage of the total lodestar, the dates were not ultimately necessary for the Court's review.

the usual range in common fund cases where the recovery is between $50 and 200 million.  *Vizcaino*, 290 F.3d at 1047, 1050 n.4.  In cases where the common fund is under $10 million, fees are often above 25%.  *Craft*, 624 F. Supp. 2d at 1127 (citing *Van Vranken v. Atlantic Richfield Co.,* 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) ("[m]ost of the cases Class Counsel have cited in which high percentages such as 30–50 percent of the fund were awarded involved relatively smaller funds of less than $10 million"). "Other case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in case in which the common fund is relatively small.*"  Cicero v. DirecTV, Inc.,* No. EDCV 07-1182, 2010 WL 2991486, at * 6 (C.D. Cal. July 27, 2010) (citing Rubenstein, Conte and Newberg, NEWBERG ON CLASS ACTIONS at § 14:6). Therefore, 34% of the common fund of $310,000 is reasonable.

Because the Court finds the attorneys' fee award is reasonable, the Court approves the attorneys' fee award of $105,421.33.

**E.    Costs**

Costs may also be awarded as part of a FLSA settlement.  *Selk*, 159 F. Supp. 3d at 1180-81.  Plaintiff's counsel seeks out-of-pocket costs in the amount of $169.676.67 ($90,431.07 for Kesselman Brantly Stockinger and $79,245.60 for Hyun Legal).  (Dkt. No. 83-1, Dakak Decl. ¶ 15; *id.*, Ex. D; Dkt. No. 83-2, Hyun Decl. ¶ 13; *id.,* Ex. B.[4])

While the out-of-pocket costs are the largest figure in the Gross Settlement Value, they were necessary costs to prosecute the case which involved retaining two experts, attending mediation before Judge Layne Phillips, and another full day of a settlement conference before Magistrate Judge William Gallo and engaging in a number of discovery disputes before Magistrate Judge Lopez and this Court.  (Dkt. Nos. 22, 23, 27,

---

[4] The Court notes again that Hyun Legal's breakdown of costs does not include the dates they were incurred.  (Dkt. No. 83-2, Hyun Decl., Ex. B.)  However, a review of Kesselman Brantly Stockinger's breakdown of costs aided in the Court's review of whether Hyun Legal's costs were reasonable and not duplicative.

28, 41, 70.)  Therefore, the Court approves Plaintiff's request for costs in the amount of $169,676.67.

## CONCLUSION

Accordingly, Plaintiff's unopposed motion for approval of the collective action settlement is GRANTED.  Having considered the papers filed in support of the motion, and the law, the Court now enters this Order and FINDS:

## I.   APPROVAL OF SETTLEMENT

The Court has reviewed the terms of the Settlement, including the $310,000 Gross Settlement Value, the plan of allocation, and the release of claims.  The Court has also reviewed Plaintiff's moving papers and all supporting declarations.  Based on review of those papers, and the Court's familiarity with this case, the Court finds and concludes that the Settlement is the result of arms-length negotiations between the Parties, conducted under the supervision of Magistrate Judge William Gallo, after Plaintiff's Counsel had adequately investigated Plaintiff and the Opt-Ins' claims and become familiar with their strengths and weaknesses. The assistance of Judge Gallo in the settlement process confirms that the Settlement is non-collusive.

The Court finds and determines that the payments to be made to the Opt-Ins as provided for in the Settlement are fair and reasonable. The proposed plan of allocation is rationally related to the relative strengths of the respective claims asserted and each collective action member's damages.

The Court also approves the cy pres payment to the nonprofit, Legal Aid at Work, for any checks uncashed after 180 days from distribution.  The Settlement is not a concession or admission, and shall not be used or construed against Defendant as an admission or indication with respect to any claim of any fault or omission by Defendant.

## II.   APPROVAL OF THE NOTICE PROGRAM

Plaintiff has also submitted for this Court's approval a proposed Notice of Settlement (submitted as Exhibit A to the Declaration of Majed Dakak filed herewith).

The Notice is the best notice practicable under the circumstances. The Notice fairly, plainly, accurately, and reasonably informs Opt-Ins of: (1) appropriate information about the nature of this action, the identities of the Opt-Ins, the identity of Plaintiff's Counsel, and the essential terms of the Settlement, including the plan of allocation; (2) appropriate information about the amounts being allocated to Plaintiff as a Service Payment and to Plaintiff's Counsel's as attorneys' fees and costs; and (3) appropriate instructions as to how to obtain additional information regarding this action and the Settlement.

The proposed plan for distributing the Notice likewise is a reasonable method calculated to reach all individuals who would be bound by the Settlement. Under this plan, the Settlement Administrator will distribute the Notice and Settlement Share checks to all Opt-Ins by first-class mail to their last known addresses. There is no additional method of distribution that would be reasonably likely to notify Opt-Ins who may not receive notice pursuant to the proposed distribution plan.

Accordingly, the Court finds and concludes that the proposed plan for distributing the Notice will provide the best notice practicable and satisfies all legal and due process requirements.

## III.    PLAINTIFF'S AND OPT-INS' RELEASE OF CLAIMS

The Court has reviewed the release in paragraph XI (36) of the Settlement Agreement and finds it to be fair, reasonable, and enforceable under the FLSA and all other applicable law. Plaintiff and every Opt-In shall, pursuant to the Settlement, be bound by the release of claims as set forth in the Settlement, regardless of whether a Plaintiff or Opt-in cashes or deposits his or her settlement check.

## IV.    APPOINTMENT OF SETTLEMENT ADMINISTRATOR

Phoenix Settlement Administrators is hereby appointed Settlement Administrator to carry out the duties set forth in this Approval Order and the Settlement Agreement. Phoenix shall be paid **$4,750** for the administration of this settlement.

## V.    SERVICE PAYMENT TO THE NAMED PLAINTIFF

The Court approves the service payment to Named Plaintiff as set forth under the Settlement Agreement and finds **$5,000** fair and reasonable.

## VI.   PLAINTIFF'S COUNSEL'S AWARD OF FEES AND COSTS

The Court finds and determines that the payment of **$105,421.33** for collective counsel's attorneys' fees, **$169,676.67** for collective counsel's litigation costs, is fair and reasonable.

## VII.   ENFORCEMENT OF OBLIGATIONS

Nothing in this Settlement Approval Order will preclude any action to enforce the Parties' obligations under the Settlement or under this order, including the requirement that Defendant fund the Gross Settlement Value and provide the data to the Settlement Administrator in accordance with the terms of the Settlement Agreement.

## VIII.   FINAL JUDGMENT

By means of this Settlement Approval Order, this Court hereby enters final judgment in this action, as defined in Federal Rule of Procedure 58(a)(1).  The Parties are hereby ordered to comply with the terms of the Settlement. This action is dismissed with prejudice, each side to bear its own costs and attorneys' fees except as provided by the Settlement Agreement and the Court's orders.

## IX.   CONTINUING JURISDICTION

Without affecting the finality of the Court's judgment in any way, the Court retains jurisdiction over this matter for purposes of resolving issues relating to interpretation, administration, implementation, effectuation and enforcement of the Settlement.

## X.   SETTLEMENT APPROVAL

Based on all of these findings and the applicable legal standards, the Court concludes that the proposed Settlement meets the criteria for settlement approval, and

/ / /

/ / /

/ / /

/ / /

18cv1189-GPC(LL)

Orders the Parties to distribute the payments required under the Settlement.

IT IS SO ORDERED.

Dated:  February 9, 2021

Hon. Gonzalo P. Curiel
United States District Judge

18cv1189-GPC(LL)