Majed Dakak (SBN 271875)
mdakak@kbslaw.com
KESSELMAN BRANTLY STOCKINGER LLP
1230 Rosecrans Avenue, Suite 400
Manhattan Beach, CA 90266
(310) 307-4555
(310) 307-4570 (Fax)

Dennis S. Hyun (SBN 224240)
dhyun@hyunlegal.com
HYUN LEGAL, APC
515 S. Figueroa Street, Suite 1250
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 (Fax)

Attorneys for PLAINTIFF and the COLLECTIVE

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH CUEVAS, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CONAM MANAGEMENT CORPORATION, a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:18-cv-1189-GPC-LL<br><br>**PLAINTIFF'S UNOPPOSED NOTICE OF MOTION AND MOTION FOR APPROVAL OF ADDITIONAL DISBURSEMENT OF COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:        October 22, 2021<br>Time:       1:30 p.m.<br>Courtroom: 2D, 2nd Floor<br><br><u>**COLLECTIVE ACTION**</u> |

**TO ALL PARTIES AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that at 1:30 p.m., on October 22, 2021, or as soon thereafter as the matter may be heard in Courtroom 2D, 2nd Floor, of the United States District Court for the Southern District of California, located at 221 West Broadway, San Diego, CA 92101, before the Honorable Gonzalo P. Curiel, Plaintiff Elizabeth Cuevas will and hereby does move the Court for an Order approving: an additional settlement disbursement arising out of the (1) collective action settlement ("Settlement") between Elizabeth Cuevas ("Plaintiff") and ConAm Management Corporation ("Defendant") (collectively, the "Parties"), and (2) this Court's approval of the same Settlement. *See* ECF 87 (Judgment and Order Granting Plaintiff's Unopposed Motion for Approval of Collective Action Settlement).

This motion is necessitated due to a $5,000 refund from Plaintiff's expert that was returned to Plaintiff's counsel due a refund in the retainer deposit. Due to this refund, counsel for Plaintiff seeks approval through this motion to disburse the $5,000 refund to the 367 opt-ins under the same allocation as previously approved by this Court. The minimal amount of Employer side taxes will also be paid out of the $5,000. Any amounts not cashed within 180 days will be donated the Court's previously approved *cy pres* recipient Legal Aid to Work. Additionally, counsel of Plaintiff has agreed to pay for any and all administrative costs related to this additional disbursement in order to achieve the best result for all 367 opt-ins.

In the alternative, if the Court is disinclined to order payment to collective members, counsel for Plaintiff respectfully requests that this Court's order that the $5,000 be distributed to the Court's previously approved *cy pres* recipient Legal Aid at Work.

Defendant does not object to this Motion's proposed course of action and takes no position on this matter.

This motion is made on the grounds that additional disbursement is fair, reasonable, and adequate to the Opt-Ins; and should be approved, as discussed in the attached memorandum. Again, Defendant does not oppose this motion.

This motion is based on this notice, the attached memorandum of points and authorities in support of the motion, the Declarations of Majed Dakak, the Court's record of this action, all matters of which the Court may take notice; and oral and documentary evidence presented at the hearing on the motion.

Dated: August 18, 2021

KESSELMAN, BRANTLY & STOCKINGER LLP
HYUN LEGAL, APC

By: _____*s/ Majed Dakak*_____
Majed Dakak
Dennis S. Hyun

Attorneys for Plaintiff and the Collective
Email: *mdakak@kbslaw.com*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND PROCEDURAL HISTORY

On February 9, 2021, this Court approved the collective action settlement ("Settlement") between Elizabeth Cuevas ("Plaintiff") and ConAm Management Corporation ("Defendant") (collectively, the "Parties"). (ECF 87). Specifically, in this Court's Judgment and Order Granting Plaintiff's Unopposed Motion for Approval of Collective Action Settlement, the Court approved and thoroughly discussed the Settlement. A Court's approval and analysis, as related to this motion, included:

- "… [T]he Settlement is the result of arms-length negotiations between the Parties, conducted under the supervision of Magistrate Judge William Gallo, after Plaintiff's Counsel had adequately investigated Plaintiff and the Opt-Ins' claims and become familiar with their strengths and weaknesses. The assistance of Judge Gallo in the settlement process confirms that the Settlement is non-collusive." (ECF 87 at 16:10-16).
- $310,000 gross settlement amount, the plan of allocation, and the release of claims. (*Id*. at 16:8-9).
- "The Court also approves the *cy pres* payment to the nonprofit, **Legal Aid at Work**, for any checks uncashed after 180 days from distribution." (*Id*. at 16:21-22 (emphasis added)).
- Approval of the notice program via written notice to all Opt-Ins. (*Id*. at 16:26-17:17).
- Plaintiff's and Opt-Ins' release of claims. (*Id*. at 17:19-23).
- "**Phoenix Settlement Administrators** is hereby appointed Settlement Administrator to carry out the duties set forth in this Approval Order and the Settlement Agreement." (*Id*. at 17:25-26 (emphasis added)).

- "The Court approves the service payment to Named Plaintiff as set forth under the Settlement Agreement and finds $5,000 fair and reasonable." (*Id*. at 18:1-2).
- "The Court finds and determines that the payment of $105,421.33 for collective counsel's attorneys' fees, **$169,676.67 for collective counsel's litigation costs**, is fair and reasonable." (*Id*. at 18:4-6 (emphasis added)).

In the same Judgment and Order Granting Plaintiff's Unopposed Motion for Approval of Collective Action Settlement the Court retained jurisdiction "over this matter for purposes of resolving issues relating to interpretation, administration, implementation, effectuation and enforcement of the Settlement." (*Id*. at 18:19-21).

Months after the administration of the above Court's Judgment and Order was completed by Phoenix Settlement Administrators, counsel for Plaintiff was notified by their expert, Nathan Associates, Inc. ("Nathan"), that they were going to receive a refund for $5,000.00 of their retainer deposit. (Declaration of Majed Dakak ("Dakak Decl.") ¶ 3 filed herewith). Plaintiff's counsel was never told that they would be refunded any monies by Nathan nor did they know that any monies from Nathan was due to be returned to Plaintiff's counsel. (*Id*.) This Court previously awarded Plaintiff's counsel all of their litigation costs, including all expert fees charged by Nathan. (ECF 87 at 18:4-6). Thus, the $5,000.00 retainer refund would result in an overpayment to Plaintiff's counsel, and for this reason, Plaintiff's counsel would prefer that the monies go to the collective, or to the nonprofit, Legal Aid at Work.

In other words, at the time Plaintiff made, and this Court approved Plaintiff's Unopposed Motion for Approval of Collective Action Settlement on February 9, 2021, counsel for Plaintiff paid to Nathan the full amounts represented in the previously filed Declaration of Majed Dakak (ECF 83-1, Dakak Decl. Exh. D at 60) and the previously filed Declaration of Dennis Hyun (ECF 83-2 Hyun Decl., Exh. B at 10) filed in support of Plaintiff's Unopposed Motion for Approval of Collective Action Settlement.

However, months after the administration of this Court's approved Settlement Agreement, counsel for Plaintiff learned that the retainer amount previously paid to Nathan in the amount of $5,000 (($2,500 paid by Kesselman Brantly Stockinger LLP (*see* ECF 83-1; Dakak Decl. Exh. D at 60) and $2,500 paid by Hyun Legal (*see* ECF 83-2 Hyun Decl., Exh. B at 10)) was never applied against invoicing by Nathan Associates, Inc. (Dakak Decl. ¶ 4). This misunderstanding arose because counsel for Plaintiff understood otherwise in their communications with Nathan Associates, Inc. – i.e., counsel for Plaintiff believed the paid retainer amount was used as payment towards Nathan's invoices. (*Id*.).

After counsel for Plaintiff became aware of the above $5,000 discrepancy, counsel for Plaintiff emailed counsel for Defendant to apprise Defendant's counsel of the extra $5,000.00. (Dakak Decl. ¶ 5). After the meet and confer with Defendant's counsel, Defendant's counsel stated it would not oppose this Motion and the course of action being taken as a result of the $5,000 retainer refund. (*Id*.).

## II. PLAINTIFF RESPECTFULLY REQUESTS THAT THE COURT ORDER THE SECOND DISBURSEMENT

This motion again simply seeks to <u>increase</u> the amount paid to Opt-Ins by $5,000. Moreover, Plaintiff's counsel will pay for any and all costs related to the administration of these additional funds. In order to minimize the administration costs, Plaintiff only requests that Phoenix Settlement Administrators (which was previously approved by this Court) be utilized again for the second disbursement as that Phoenix Settlement Administrators has already set up the database related to the Opt-Ins in this case and has already calculated the allocation among them.

The Settlement contemplated an issue like the instant one to potentially occur. Specifically, the Parties agreed to the following terms in the Settlement: "ConAm, ConAm's counsel, the Settlement Collective, and Collective Action Counsel shall proceed diligently to prepare and execute all documents, to seek the necessary Court

approvals, and to do all other things reasonably necessary to conclude this Settlement." (ECF 82 [Jt. Stip.] at ¶ 45 [Further Cooperation]).

The Parties also agreed that this Court should "shall retain jurisdiction to construe, interpret and enforce this Agreement, to supervise all notices, the administration of the settlement and this Agreement, and to hear and adjudicate any dispute arising from or related to the settlement and/or this Agreement." (ECF 82 [Jt. Stip.] at ¶ 51 [Continuing Jurisdiction]). This Court has also retained jurisdiction "over this matter for purposes of resolving issues relating to interpretation, administration, implementation, effectuation and enforcement of the Settlement." (ECF 87 at 18:19-21).

Lastly, the Settlement contained a calculation in order to arrive to the amount distributed to the Opt-Ins via a waterfall "Net Settlement Value" calculation. (ECF 82 [Jt. Stip.] at ¶ 28 [Plan of Allocation and Distribution of the Gross Settlement Value]). This same waterfall approach will not be disrupted by the second disbursement request made in this motion. Per ¶ 28 of the Settlement, first "any attorneys' fees and reasonable and necessary costs" are taken out of the "Gross Settlement Value" or "GSV" which equals $310,000.00. *Id*. at ¶¶ 10, 28(a). Second, any Enhancement Award, as may be awarded by the Court is deducted. *Id*. at ¶ 28(b). Third, the costs and expenses incurred by, or fees imposed by, the Claims Administrator. *Id*. at ¶ 28(c). Fourth, the amounts necessary to satisfy the ConAm's payroll tax obligations. *Id*. at ¶ 28(d). After going through the above deductions, the "Net Settlement Value" or "NSV" -- "shall be made available to the Settlement Collective …." *Id*. at ¶ 28(e).

Given that the retainer refund which Plaintiff's counsel seeks to disburse would increase the "Net Settlement Value" or "NSV" as agreed to by the Parties, Plaintiff's counsel's request to issue a second disbursement for full amount of the error (i.e. $5,000) is in accord with the Settlement. Although the Settlement would allow Plaintiff to request costs arising from the "expenses incurred by, or fees imposed by, the Claims Administrator" (*id*. at ¶ 28(c)), Plaintiff counsel is willing to pay for any all costs by Phoenix Settlement Administrators to administer this this second disbursement in order to

produce the best result for the Opt-Ins. Again, Defendant has not objected to this second disbursement.

Taxes related to this second disbursement will be handled in the same way as agreed to in the Settlement. "Fifty percent (50%) of each settlement payment shall be allocated to unpaid wages, less standard withholdings and authorized deductions, for which a Form W-2 will be issued. Fifty percent (50%) of each settlement payment shall be allocated to liquidated damages from which no deductions will be taken and for which a Form 1099 will be issued." (ECF 82 at ¶ 30). Additionally, the employer side payroll taxes are to be deducted from the gross settlement payment amount in order to arrive to the Net Settlement Value that is allocated to the Opt-Ins. (ECF 82 [Jt. Stip.] at ¶¶ 28(d)-(e)). The estimated amount of employer-side taxes here that will be deducted from the Gross Net Settlement Amount arising out of this proposed second distribution of $5,000 is expected to be $361.25.[1]

Moreover, this proposed second disbursement to the Opt-Ins, in the amount of $5,000, produces a recovery far <u>greater</u> than 100% calculated liability. The previously approved "Net Settlement Amount of $25,152.00 is 100% of the maximum exposure (and slightly less than 100% of the total liability after accounting for employer-side taxes) for the 367-member collective." (ECF 87 at 6:1-3). By adding $5,000 this proposed second disbursement the total Net Settlement Amount becomes $30,152.00. This result produces an approximately 20% increase ((5,000 / 25,152) * 100)) or a result of 120% of calculated liability (before employer side taxes). Thus, Plaintiff's counsel's request to perform a second disbursement to the Opt-Ins in the amount of $5,000 is fair and reasonable and is in accords with the Settlement's intent and terms.

### A. Second Notice

Plaintiff has also submitted for this Court's approval a proposed <u>Second</u> Notice of

---

[1] This is a conservative number using an approximate maximum employer-side rates. Per the settlement administrator, the employer-side taxes here may be less, but not more, than $361.25 ($2,500 * 14.45%) as 50% of the Net Settlement Amount will be allocated as wages. (ECF 82 [Settlement] at ¶ 30).

Settlement to be sent out with the proposed second disbursement of $5,000 (Dakak Decl., **Exh. A**).  This Second Notice of Settlement is similar in nature as the first notice that was approved by the Court.  However, the Second Notice of Settlement addresses the second disbursement of $5,000.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court approve this second disbursement to the 367 Opt-Ins in the amount of $5,000.  Plaintiff also requests that the Court's previously approved administer, Phoenix Settlement Administrators, administer this this second disbursement.  Counsel for Plaintiff will pay all costs arising out of Phoenix Settlement Administrators administration of this second disbursement.  Any employer side taxes will be deducted from the gross amount available in the second disbursement.  Any amounts not cashed within 180 days will be donated to the Court's previously approved *cy pres* recipient Legal Aid at Work.

In the alternative, counsel for Plaintiff respectfully requests that the $5,000 be sent to the *cy pres* recipient Legal Aid at Work.

And all other terms previously ordered and adjudicated by this Court shall remain in effect and will not be disturbed.

Dated:  August 18, 2021         KESSELMAN, BRANTLY & STOCKINGER LLP
                                HYUN LEGAL, APC


                                By:  _____*s/ Majed Dakak*_____
                                        Majed Dakak
                                        Dennis S. Hyun

                                Attorneys for Plaintiff and the Collective
                                Email:  mdakak@kbslaw.com